IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAIN STREET BUSINESS FUNDING, LLC; AND ROBERT S. GOGGIN, III,<br><br>Plaintiffs,<br>v.<br><br>MICHAEL J. GOLDNER; JDJSL LLC; DOVECOTE LANE, LLC; JOEL S. LUBER; AND REGER RIZZO & DARNELL LLP.<br><br>Defendants. | Case No. _____<br><br>(Removed from the Court of Common Pleas, Philadelphia County, Case No. 16-05-02449) |

## NOTICE OF REMOVAL OF CIVIL ACTION

Don A. Beskrone, not individually but solely as chapter 7 trustee (the "Trustee") for the chapter 7 bankruptcy estate ("Estate") of Main Street Business Funding, LLC ("Debtor"), a plaintiff herein, hereby gives notice pursuant to 28 U.S.C. § 1452(a) (the "Notice") of the removal of *Main Street Business Funding, LLC, et al., v. Michael J. Goldner, et al.*, pending in the Court of Common Pleas of Philadelphia, Pennsylvania ("State Court"), Case No. 160502449, May Term 2016 (the "State Court Action"), from the State Court to the United States District Court for the Eastern District of Pennsylvania (the "Court"). In support of its right of removal, the Trustee states that this action is properly removed for these reasons:

BACKGROUND

1.     On March 20, 2019 ("Petition Date"), certain petitioning creditors John P. Lane, Jr., Jennifer Karpchuk, and Joseph Cooney, filed a chapter 7 involuntary petition against the Debtor.

2.     Thereafter, on May 10, 2019, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an Order for Relief in an Involuntary Case, thereby

commencing the Debtor's chapter 7 proceeding in the case styled *In re: Main Street Business Funding LLC,* Case No. 19-10598 (BLS) (Bankr. D. Del. 2019).

3. On May 10, 2019, the United States Trustee for the District of Delaware appointed Don Beskrone to serve as interim chapter 7 trustee in the chapter 7 case, thereby vesting the Trustee with, among other things, all rights of the Debtor and its estate to prosecute and settle all claims and causes of action of the Debtor.

ARGUMENT

4. This Court may, upon removal, exercise jurisdiction over the State Court Action. 28 U.S.C. § 1452(a) provides, in pertinent part:

> A party may remove any claim or cause of action in a civil action ...to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of [title 28].

28 U.S.C. § 1452(a).

5. The State Court Action may be removed to this Court because the United States District Court for the Eastern District of Pennsylvania has jurisdiction over the claims and causes of action asserted therein pursuant to 28 U.S.C. §1334(b). Section 1334(b) confers original, but not exclusive jurisdiction in this court over civil proceedings that are related to bankruptcy cases under Title 11 of the United States Code. In this proceeding, the relevant bankruptcy case is that of Debtor, Main Street Business Funding, LLC, which is the subject of a bankruptcy case in Delaware and is a plaintiff in the State Court Action.

6. A civil proceeding is "related to" a bankruptcy case if the outcome of that proceeding "could conceivably have any effect on the estate being administered in bankruptcy" or "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt

estate." *U.S. Trustee v. Gryphon at Stone Mansion, Inc.,* 216 B.R. 764, 767 (W.D. Pa. 1997), citing to *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984)).

7.     The Trustee is the owner of substantially all of the causes of action in the State Court Action[1]. As such, these causes of action are assets of the Estate. A favorable judgment in the State Court Action would increase the amount of funds available for the Estate's creditors. Therefore, the State Court Action is "related to" the Bankruptcy Case because it will directly affect the amount of property available for distribution to the Estate's creditors, and the Trustee is entitled to remove the State Court Action to this Court pursuant to 28 U.S.C. § 1452(a).

8.     Written notice of the filing of this Notice will be given promptly to all parties, as required by 28 U.S.C. § 1446(d).

9.     A copy of this Notice has been contemporaneously filed with the Clerk of the State Court, as required by 28 U.S.C. § 1446(d).

## CONCLUSION

WHEREFORE, Debtor and Plaintiff, Main Street Business Funding LLC, by and through the Trustee, respectfully requests that the above-captioned action be removed to this Court and that the Court grant such other relief as may be just.

Dated: August 2, 2019

> Don A. Beskrone, not individually but solely as chapter 7 Trustee for the chapter 7 bankruptcy estate of Main Street Business Funding, LLC.

> KUTAK ROCK LLP

---

[1]     Robert S. Goggin, III, Esq. has informed the Trustee that he consents to this removal.

*/s/ Peter N. Kessler*
Oliver D. Griffin, ID No. 88026
Peter N. Kessler, ID No.: 209033
1760 Market Street, Suite 1100
Philadelphia, PA  19103
(215) 299-4384
oliver.griffin@kutakrock.com
peter.kessler@kutakrock.com

## CERTIFICATE OF SERVICE

I, Peter N. Kessler, hereby certify that I have caused copies of the foregoing Notice of Removal to be served via first class mail upon the following:

William A. Harvey
William J. Clements
Klehr Harrison Harvey Branzburg LLP
1835 Market Street, 14th Floor
Philadelphia, PA 19103
(215) 569-2700
*Attorneys for Michael J. Goldner JDJSL, LLC and Dovecote Lane, LLC*

Paul C. Troy
Kristy Castagna
Kane, Pugh, Knoell, Troy & Kramer, LLP
510 Swede Street
Norristown, PA 19401
(610) 275-2000
*Attorneys for Reger Rizzo & Darnell LLP*

Jeffrey B. McCarron
Josh J.T. Byrne
Swartz, Campbell LLC
50 S. 16th Street, 28th Floor
Philadelphia, PA 19102
(215) 564-5190
*Attorneys for Joel S. Luber*

Robert S. Goggin, III
1528 Walnut Street
Suite 900
Philadelphia, PA 19102

*/s/Peter N. Kessler*
PETER N. KESSLER

Dated: 8/2/2019

RECEIVED

JUL 2 3 2019

ROOM 521

Filed and Attested by the
Office of Judicial Records
JUL 24 ... pm

MAIN STREET BUSINESS FUNDING, LLC;   :   COURT OF COMMON PLEAS
AND ROBERT S. GOGGIN, III,            :   PHILADELPHIA COUNTY
                                      :
        Plaintiffs,                   :
                                      :
    v.                                :   MAY TERM 2016
                                      :   NO. 02449
                                      :
MICHAEL J. GOLDNER; JDJSL LLC;        :   CIVIL ACTION – LAW
DOVECOTE LANE, LLC; JOEL S. LUBER;    :
AND REGER RIZZO & DARNELL LLP.        :
                                      :   *Jury Trial Demanded*
        Defendants.                   :

DOCKETED

JUL 24 2019

R. POSTELL
COMMERCE PROGRAM

## JOINT STIPULATION FOR EXTENSION OF TIME TO FILE SUMMARY JUDGMENT RESPONSE

WHEREAS Joel S. Luber ("Luber") filed a motion for summary judgment on or about July 15, 2019;

WHEREAS Reger Rizzo & Darnell LLP ("Reger Rizzo") also filed a motion for summary judgment on or about July 15, 2019;

WHEREAS counsel for each of Luber and Reger Rizzo have courteously consented to an enlargement of time for Plaintiffs to respond to each of their respective summary judgment motions;

**IT IS HEREBY STIPULATED AND AGREED:**

The date for filing of Plaintiffs' oppositions to each of Luber's and Reger Rizzo's motions for summary judgment shall be Friday, Sept. 13, 2019.

Main Street Business Funding, Llc Etal Vs Go-STPAP



16050244900279

190715 0

Case ID: 160502449
Control No.: 19071571

**ROBERT S. GOGGIN, III**

_____
Robert S. Goggin, III, Esquire


**SWARTZ CAMPBELL LLC**

_____
Jeffrey B. McCarron, Esquire
Josh J.T. Byrne, Esquire
_Attorneys for Joel S. Luber_


**KANE, PUGH, KNOLL, TROY & KRAMER, LLP**

_____
Paul Troy, Esquire
Kristy Castagna, Esquire
_Attorneys for Reger, Rizzo & Darnell, LLP_


**KUTAK ROCK, LLP**

_____
Peter N. Kessler, Esquire
_Attorneys for Plaintiff Main Street_


**APPROVED AND SO ORDERED**, this _____ day of July, 2019.


_____
Hon. Ramy I. Djerassi


2



**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION – CIVIL**

| | |
|---|---|
| **MAIN STREET BUSINESS FUNDING, LLC ETAL** | **May Term 2016** |
| | **No. 02449** |
| **VS** | |
| **GOLDNER** | |

DOCKETED
1 3 2019
N. ERICKSON
DAY FORWARD

### *REVISED CASE MANAGEMENT ORDER*

Be advised that the Case Management Order issued for the above-captioned action has been revised as follows:

1.  All discovery shall be completed not later than 01-APR-2019.

2.  Plaintiff shall submit expert reports not later than 06-MAY-2019.

3.  Defendant shall submit expert reports not later than 01-JUL-2019.

4.  All pre-trial motions other than motions in limine shall be filed not later than 15-JUL-2019.

5.  A settlement conference will be scheduled any time after 04-NOV-2019.

6.  A pre-trial conference will be scheduled at any time after 02-DEC-2019.

7.  It is expected that this case shall be ready for trial by 06-JAN-2020.

All other terms and conditions on the original Case Management Order will remain in full force and effect.

*BY THE COURT:*

/s/

13-FEB-2019

**RAMY DJERASSI, J.**
**TEAM LEADER**

Main Street Business Fu-RVCMO

16050244900244

KUTAK ROCK LLP
By: Oliver D. Griffin, Esquire
ID No.: 88026
Peter N. Kessler, Esquire
ID No.: 209033
Karl C. Helgerson, Esquire
ID No.: 320302
Two Liberty Place, Suite 28B
50 South 16th Street
Philadelphia, PA  19102
T: (215) 299-4384
F: (215) 981-0719


Filed and Attested by the
Office of Judicial Records
15 AUG 2016 02:12 pm
C. FORTE

*Attorneys for Plaintiffs*

| | | |
|---|---|---|
| MAIN STREET BUSINESS FUNDING, LLC<br>1528 Walnut Street<br>Suite 900<br>Philadelphia, Pennsylvania 19102;<br>and<br>ROBERT S. GOGGIN, III<br>1528 Walnut Street<br>Suite 900<br>Philadelphia, Pennsylvania 19102 | : | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY |
| Plaintiffs, | : | |
| v. | : | MAY TERM, 2016<br>NO. 02449 |
| MICHAEL J. GOLDNER<br>7 Dovecote Lane<br>Malvern, Pennsylvania, 19355;<br>and<br>JDJSL LLC<br>1700 Market Street, Suite 3100<br>Philadelphia, Pennsylvania, 19103;<br>and<br>DOVECOTE LANE, LLC<br>226 Valley Forge Lookout Place,<br>Radnor, Pennsylvania, 19087;<br>and<br>JOEL S. LUBER<br>2929 Arch Street<br>Philadelphia, Pennsylvania, 19104;<br>and | : | CIVIL ACTION – LAW<br><br>*Jury Trial Demanded* |

Case ID: 160502449

REGER RIZZO & DARNELL, LLP          :
2929 Arch Street                    :
Philadelphia, Pennsylvania, 19104    :
                                  :
          Defendants.            :

## SECOND AMENDED COMPLAINT

Main Street Business Funding, LLC ("Main Street") and Robert S. Goggin, III ("Goggin," and together with Main Street, "Plaintiffs"), by and through their undersigned counsel, hereby bring this Complaint against the above-named defendants, and in support thereof, say:

### Introduction

This case arises out of the scheme by certain defendants to defraud and steal from Plaintiffs for their own personal gain. Over a two year period, Michael Goldner ("Goldner") of JDJSL, LLC ("JDJSL") used his position of trust and confidence as a consultant of Main Street to embezzle over two and a half million dollars. Goldner was assisted in his fraudulent scheme by his cousin, Joel Luber ("Luber"), an attorney of the law firm Reger, Rizzo & Darnell, LLP ("Reger Rizzo"). Aside from assisting the fraud, Luber himself worked under a significant conflict of interest, which he himself belatedly acknowledged. (See attached Exhibit 2). During all relevant times Luber represented Defendant Goldner and Defendant Goldner's family trust (the "Goldner Family Trust"), as well as Plaintiff Main Street, Plaintiff Goggin, and Plaintiff Goggin's family trust (the "Goggin Family Trust") – and, worse, took a pecuniary interest in JDJSL, the counter-party to Main Street. Had it not been for Luber's conflict of interest, including his own personal interest in the monies flowing to JDJSL and his work in connection with DOVECOTE, another Goldner entity, Goggin would have received proper legal advice from the outset and the frauds detailed herein would never have taken place.

2

Case ID: 160502449

Defendant Goldner consulted on and ran Plaintiff Main Street's business and finances. Goldner was not a partner, but rather was a consultant through an entity set up by Defendant Luber called JDJSL. Defendant Luber ran JDJSL. Defendant Goldner used his close and confidential relationship with Main Street to embezzle money for the purchase of a house, and to embezzle additional millions. Notwithstanding numerous conflicts, Luber was counsel to Main Street; facilitated the embezzlement of Main Street's property; and enabled the transfer of money from Main Street, for which he was counsel, to DOVECOTE LANE, LLC ("DOVECOTE"), which he oversaw, for both Goldner's and his own personal benefit.

Plaintiff Goggin remained in the dark about any of defendants' schemes until he was set to testify as to Defendant Goldner at Defendant Goldner's sentencing hearing for an unrelated criminal matter involving Defendant Goldner's guilty plea associated with wire fraud and tax evasion charges. (See attached Exhibit 1).

The first scheme Plaintiff Goggin discovered was Goldner's embezzlement of funds to purchase a house. Defendant Luber (who was *everyone's* attorney) was well aware of the scheme, and well aware that it put him in a bind respecting his representation of both Plaintiffs and defendants – and was well aware of the illicit nature of the scheme. However, rather than disclose the embezzlement to Plaintiff Goggin when it first took place, or withdraw from simultaneously representing both Defendant Goldner and Plaintiff Goggin, Defendant Luber attempted to paper over the scheme by springing its existence on Plaintiff Goggin shortly before Plaintiff Goggin was to testify positively about Goldner at Goldner's sentencing hearing, and then drafting and backdating supporting materials, all so that Luber could protect his own substantial financial interest in JDJSL's ongoing management of, and thievery from, Main Street.

Case ID: 160502449

This action seeks to redress the direct and proximate harm caused by defendants' wrongful conduct and/or inaction. Plaintiffs seek compensatory and punitive damages and the establishment of a constructive trust.

## The Parties

1.     Plaintiff Main Street is a Delaware limited liability company having a principal place of business at 1528 Walnut Street, Suite 900, Philadelphia, Pennsylvania 19102.

2.     Plaintiff Goggin is an adult individual with an address at 1528 Walnut Street, Suite 900, Philadelphia, Pennsylvania 19102.

3.     Defendant Goldner is an adult individual with an address at 7 Dovecote Lane, Malvern, Pennsylvania, 19355.

4.     Defendant JDJSL is a Pennsylvania limited liability company having a principal place of business at 1700 Market Street, Suite 3100, Philadelphia, Pennsylvania, 19103.

5.     Defendant DOVECOTE is a Pennsylvania limited liability company having a principal place of business at 226 Valley Forge Lookout Place, Radnor, Pennsylvania, 19087.

6.     Defendant Luber is an adult individual with an address at 2929 Arch Street, Philadelphia, Pennsylvania, 19104.  He is a partner with Reger Rizzo.  At all relevant times, Luber was counsel to Goldner and various entities related thereto.  At all relevant times, Luber has also served as counsel to Plaintiffs.   Defendant Luber is a licensed professional with offices in Philadelphia County, Pennsylvania. Plaintiffs are asserting a professional liability claim against this defendant.

7.     Reger Rizzo is a Pennsylvania limited liability partnership with seven offices, located in four states.  Reger Rizzo's main office is located at 2929 Arch Street, Philadelphia, Pennsylvania, 19104.  Luber is a partner with Reger Rizzo & Darnell LLP.  At all relevant times

Case ID: 160502449

set forth herein, Defendant Luber was acting within the scope of his authority as a partner of Defendant Reger Rizzo, and was acting pursuant to his employment by and relationship with Defendant Reger Rizzo.  Defendant Reger Rizzo is a law firm with offices in Philadelphia County, Pennsylvania, and it is responsible for and vicariously liable for the malpractice of its partner, Luber. Plaintiffs are asserting a professional liability claim against this defendant.

## Jurisdiction and Venue

8.     This Court has subject matter jurisdiction of this lawsuit pursuant to 42 Pa. C.S.A. §931(a).

9.     The causes of action arose out of transactions or occurrences that took place in whole or in part in Philadelphia County, Pennsylvania.

10.     Venue is appropriate in Philadelphia County because: (a) defendants regularly conduct business in this county; (b) Plaintiffs' claims arose in this county; and/or (c) the events and transactions out of which Plaintiffs' claims arose took place in this county.

## The Facts

### *Background*

11.     Plaintiff Main Street is a factoring company ultimately owned by the Goggin Family Trust.

12.     At all times relevant to the complaint, Plaintiff Main Street, and its ultimate owner Plaintiff Goggin, were clients of the attorney, Defendant Luber.

13.     At all times relevant to the complaint, Defendant Luber was a partner at Reger Rizzo, was acting within the scope of his authority as a partner of the Defendant Reger Rizzo, and was acting pursuant to his employment by and relationship with the Defendant Reger Rizzo.

14.     As such, Luber and Reger Rizzo owed a fiduciary duty to Plaintiff Goggin.

Case ID: 160502449

15.     At all times, Defendant Goldner knew that Defendant Luber represented Goggin and that Luber owed a fiduciary duty towards Goggin.

16.     Main Street was a factoring company established by Goggin. Defendant Luber, on behalf of his client, Plaintiff Goggin, drafted the documentation for the establishment and operation of Plaintiff Main Street on behalf of Goggin. Indeed, Luber represented Main Street. Defendant Luber also advised Goggin on the formation of the trust that holds Main Street (the "Goggin Family Trust"). Luber also acts as counsel for the administration of the Goggin Family Trust and is paid an hourly fee.

17.     However, at all times relevant to this action, Defendant Luber also acted and continues to act as counsel for Defendant Goldner. The two are cousins. More importantly, he acted as manager for JDJSL, which compensated him a percentage of the funds earned through its contract with Main Street, from the very inception of the relationship.

*Setting Up Main Street's Business*

18.     In 2014, Plaintiff Goggin asked Defendant Goldner to operate as a business consultant to Plaintiff Main Street.

19.     Defendant Goldner agreed to act as a consultant to Plaintiff Main Street. Without obtaining a waiver from Plaintiff Goggin, Plaintiff Main Street, or any other defendant for his pecuniary interest in JDJSL, Defendant Luber proceeded to structure the consultancy between Goldner and Main Street in a manner that benefited Luber. From the very start, Defendant was fatally conflicted insofar as he acted as an attorney on behalf of all parties to this action, and structured the relationships among the parties so as to deliver himself a stream of income and protect that stream of income.

6

Case ID: 160502449

20.     Defendant Luber decided to run Goldner's consulting services through an entity, JDSJL, which Luber himself would manage, and from which Luber himself would garner an income stream.  Luber described JDJSL as a company through which he makes Goldner's consulting services available.   It is also a means by which Luber orchestrated how he would marry one client, Defendant Luber, to another pair of clients, Plaintiffs Main Street and Goggin, without affording Plaintiffs protections, all while ensuring that the moneys generated by Plaintiffs for the services of Defendant Goldner would pass through his hands for his own benefit.

21.     On information and belief, the Goldner Family Trust is the majority owner of JDJSL. On information and belief, the Goldner Family Trust's only beneficiaries are Goldner and his wife, Loretta Goldner.   On information and belief, the Goldner Family Trust is administered by Luber.  Luber is also a manager of JDJSL.  On information and belief, Luber derives income from a percentage of the moneys that flow through JDJSL.

22.     As such, Luber drafted the consulting agreement between his client Main Street and his other client JDJSL, for his own personal benefit, and knowing that the two clients were in conflict.

23.     Luber failed to inform Plaintiffs of these conflicts of interest, failed to withdraw from representing defendants or Plaintiffs or both, and, in fact, pursued a course directly contrary and antithetical to the interests of Plaintiffs, and accordingly committed legal malpractice, a failure to exercise the ordinary skill and knowledge related to common professional practice in representing Plaintiffs in connection with the matters set forth herein.

Case ID: 160502449

24.     Specifically, on May 20, 2014, JDJSL entered into a consulting agreement with Main Street, wherein JDJSL agreed to provide consulting services to Main Street via Goldner (the "Consulting Agreement").

25.     The Consulting Agreement provided that JDJSL would advise Main Street and its affiliates on general financial business matters and help procure business opportunities for their factoring businesses in exchange for 50% of Main Street's Cash Flow.

26.     Cash Flow is defined in the Consulting Agreement as Main Street's total cash receipts less total cash disbursements and amounts paid in connection with reserves for bad debts.

27.     On information and belief, Luber is compensated by JDJSL in an amount equal to 10% of the cash flowing through JDJSL, and thus is compensated indirectly, via the Consulting Agreement, by the Cash Flow of Main Street. Thus he brokered a deal on behalf of defendants, adverse to Plaintiffs, while representing both, and derived great benefit to the detriment of Plaintiffs.

28.     Upon execution of the Consulting Agreement, Goldner began consulting on behalf of JDJSL for Main Street. Goldner was in charge of the day to day operations of Main Street. Goldner is an accountant and also was in charge of keeping the books of Main Street. To assist with his accounting duties at Main Street, Goldner hired Goldner & Associates, LLC ("Goldner & Associates"). Goldner & Associates is owned and operated by Jonathan Goldner, Michael Goldner's brother.

*The Malvern Property Fraudulent Scheme*

29.     Sometime in the spring or early summer of 2015, Goldner and Luber conspired to secretly divert Plaintiffs' money to fund a real estate venture.

Case ID: 160502449

30.     Specifically, Goldner and Luber sought to purchase a $1.8 million property located at 7 Dovecote Lane, Malvern, Pennsylvania, 19355 (the "Malvern Property").

31.     On information and belief, Goldner and Luber created DOVECOTE on June 23, 2015 to hold the Malvern Property.

32.     On information and belief, DOVECOTE is wholly owned by the Goldner Family Trust, which in turn is the majority owner of JDJSL (which, again, is run by Luber).

33.     Luber is also the manager of DOVECOTE.

34.     On or about the same time, Goldner approached Goggin and asked to borrow $150,000 for closing money on the Malvern Property. Goldner explained that he needed the $150,000 to cover the cost of the property. Goggin agreed to lend the money to Goldner and to book the $150,000 as a loan from Main Street, in exchange for a note on the property as security.

35.     Unbeknownst to Goggin and contrary to Goldner's representations, Goldner needed much more than $150,000 to close the Malvern Property. Accordingly, Goldner began plotting how to obtain the shortfall from Main Street, without Goggin's knowledge.

36.     On information and belief, on or about July 14, 2015, Goldner, with the aid of Luber, cause Main Street to borrow $700,000 from Par Funding ("Par Loan") at a high interest rate. Goldner did not inform Goggin of the existence or purpose of the Par Loan, nor did he receive permission from Goggin or Main Street to take out the Par Loan. In fact, Goldner committed fraud by e-signing the loan document in Goggin's name without Goggin's knowledge or permission.

37.     Similarly, Luber, who managed DOVECOTE and thus received the funds from Main Street, which had been obtained via falsified loan documents at an exorbitant interest rate, failed to counsel, caution or warn his clients, Plaintiffs Main Street or Goggin, about the

Case ID: 160502449

derivation of the proceeds going to Defendant DOVECOTE or the exorbitant rate of interest of the Par Loan, and thus acted to the detriment of his clients, Main Street and Goggin, for the benefit of the entity he managed, DOVECOTE, to protect his own flow of income from JDJSL, and for the benefit of his cousin. Indeed, Luber failed to inform Plaintiffs of the looting, the exorbitant Par Loan, or his own conflicts of interest respecting DOVECOTE and JDJSL, failed to inform him of the new conflicts that arose as a result of Goldner's and his own actions, failed to withdraw from representing defendants or Plaintiffs or both, and, in fact, pursued a course directly contrary and antithetical to the interests of Plaintiffs, and accordingly committed legal malpractice, a failure to exercise the ordinary skill and knowledge related to common professional practice in representing Plaintiffs in connection with the matters set forth herein.

38.   The following table details the transfers of the Par Loan principle to Main Street totaling $700,000:

| Date | Transferor | Transferee | Amount |
|------|-----------|-----------|--------|
| 07/14/2015 | Par Factoring | Main Street | 100,000.00 |
| 07/15/2015 | Par Factoring | Main Street | 100,000.00 |
| 07/16/2015 | Par Factoring | Main Street | 100,000.00 |
| 07/20/2015 | Par Factoring | Main Street | 100,000.00 |
| 07/21/2015 | Par Factoring | Main Street | 5,000.00 |
| 07/21/2015 | Par Factoring | Main Street | 95,000.00 |
| 07/21/2015 | Par Factoring | Main Street | 100,000.00 |
| 07/22/2015 | Par Factoring | Main Street | 100,000.00 |
| | | Total | 700,000.00 |

39.   Goldner, with the aid of Luber, unlawfully embezzled $620,000 of the Par Loan from Main Street, and used it to acquire the Malvern Property for DOVECOTE.

Case ID: 160502449

40.    Specifically, Goldner, without Goggin's knowledge or consent, caused Main Street to make the following transfers to or for defendants' benefit[1]:

| Date | Transferor | Transferee | Amount |
|---|---|---|---|
| 07/21/2015 | Main Street | Knights Abstract, Inc | 170,000.00 |
| 07/21/2015 | Main Street | Knights Abstract, Inc | 450,000.00 |
| | | Total | 620,000.00 |

41.    On information and belief, the Malvern Property is the sole asset of DOVECOTE.

42.    At the same time, Goldner cause Main Street to repay the Par Loan, including the high amount of interest it was accruing.

43.    On information and belief, Goldner embezzled these funds from Main Street because Goldner was a month away from pleading guilty to tax evasion and wire fraud charges which would involve jail time and require restitution to victims.   See attached Exhibit 1. Goldner was attempting, with Luber's connivance, to secure funds for himself and his family in a manner that would permit them to avoid the reach of any creditors, including any victims to whom Goldner owed restitution as a result of his guilty plea.  He secured these funds by stealing them from Plaintiffs and then seeking to lock them up in the Dovecote property.

44.    Approximately six months later the Par Loan to Main Street was extinguished after Main Street had repaid the principal and interest totaling **$910,100** as detailed in the following table:

---

[1] On information and belief, Knights Abstract, Inc. is the title insurance company relating to DOVCOTE's purchase of the Malvern Property.

11

Case ID: 160502449

| Date | Transferor | Transferee | Amount |
|---|---|---|---|
| 07/16/2015 | Main Street | Par Factoring | 1,970.00 |
| 07/17/2015 | Main Street | Par Factoring | 2,955.00 |
| 07/20/2015 | Main Street | Par Factoring | 2,955.00 |
| 07/21/2015 | Main Street | Par Factoring | 3,940.00 |
| 07/22/2015 | Main Street | Par Factoring | 5,909.00 |
| 07/23/2015 | Main Street | Par Factoring | 6,894.00 |
| 07/24/2015 | Main Street | Par Factoring | 6,894.00 |
| 07/27/2015 | Main Street | Par Factoring | 6,894.00 |
| 07/28/2015 | Main Street | Par Factoring | 6,894.00 |
| 07/29/2015 | Main Street | Par Factoring | 6,894.00 |
| 07/30/2015 | Main Street | Par Factoring | 6,894.00 |
| 07/31/2015 | Main Street | Par Factoring | 6,894.00 |

Case ID: 160502449

| | | | |
|---|---|---|---|
| 08/03/2015 | Main Street | Par Factoring | 6,894.00 |
| 08/04/2015 | Main Street | Par Factoring | 6,894.00 |
| 08/05/2015 | Main Street | Par Factoring | 6,894.00 |
| 08/06/2015 | Main Street | Par Factoring | 6,894.00 |
| 08/07/2015 | Main Street | Par Factoring | 6,894.00 |
| 08/10/2015 | Main Street | Par Factoring | 6,894.00 |
| 08/11/2015 | Main Street | Par Factoring | 6,894.00 |
| 08/12/2015 | Main Street | Par Factoring | 6,894.00 |
| 08/13/2015 | Main Street | Par Factoring | 6,894.00 |
| 08/14/2015 | Main Street | Par Factoring | 6,894.00 |
| 08/17/2015 | Main Street | Par Factoring | 6,894.00 |
| 08/18/2015 | Main Street | Par Factoring | 6,894.00 |
| 08/19/2015 | Main Street | Par Factoring | 6,894.00 |
| 08/20/2015 | Main Street | Par Factoring | 6,894.00 |
| 08/24/2015 | Main Street | Par Factoring | 6,894.00 |
| 08/25/2015 | Main Street | Par Factoring | 6,894.00 |
| 08/25/2015 | Main Street | Par Factoring | 6,894.00 |
| 08/26/2015 | Main Street | Par Factoring | 6,894.00 |
| 08/27/2015 | Main Street | Par Factoring | 6,894.00 |
| 08/28/2015 | Main Street | Par Factoring | 6,894.00 |
| 08/31/2015 | Main Street | Par Factoring | 6,894.00 |
| 09/01/2015 | Main Street | Par Factoring | 6,894.00 |

Case ID: 160502449

| | | | |
|---|---|---|---|
| 09/02/2015 | Main Street | Par Factoring | 6,894.00 |
| 09/03/2015 | Main Street | Par Factoring | 6,894.00 |
| 09/04/2015 | Main Street | Par Factoring | 6,894.00 |
| 09/08/2015 | Main Street | Par Factoring | 6,894.00 |
| 09/09/2015 | Main Street | Par Factoring | 6,894.00 |
| 09/10/2015 | Main Street | Par Factoring | 6,894.00 |
| 09/11/2015 | Main Street | Par Factoring | 6,894.00 |
| 09/14/2015 | Main Street | Par Factoring | 6,894.00 |
| 09/15/2015 | Main Street | Par Factoring | 6,894.00 |
| 09/16/2015 | Main Street | Par Factoring | 6,894.00 |
| 09/17/2015 | Main Street | Par Factoring | 6,894.00 |
| 09/18/2015 | Main Street | Par Factoring | 6,894.00 |
| 09/21/2015 | Main Street | Par Factoring | 6,894.00 |
| 09/22/2015 | Main Street | Par Factoring | 6,894.00 |
| 09/23/2015 | Main Street | Par Factoring | 6,894.00 |
| 09/24/2015 | Main Street | Par Factoring | 6,894.00 |
| 09/25/2015 | Main Street | Par Factoring | 6,894.00 |
| 09/28/2015 | Main Street | Par Factoring | 6,894.00 |
| 09/29/2015 | Main Street | Par Factoring | 6,894.00 |
| 09/30/2015 | Main Street | Par Factoring | 6,894.00 |
| 10/01/2015 | Main Street | Par Factoring | 6,894.00 |

Case ID: 160502449

| | | | |
|---|---|---|---|
| 10/02/2015 | Main Street | Par Factoring | 6,894.00 |
| 10/05/2015 | Main Street | Par Factoring | 6,894.00 |
| 10/06/2015 | Main Street | Par Factoring | 6,894.00 |
| 10/07/2015 | Main Street | Par Factoring | 6,894.00 |
| 10/08/2015 | Main Street | Par Factoring | 6,894.00 |
| 10/09/2015 | Main Street | Par Factoring | 6,894.00 |
| 10/13/2015 | Main Street | Par Factoring | 6,894.00 |
| 10/14/2015 | Main Street | Par Factoring | 6,894.00 |
| 10/15/2015 | Main Street | Par Factoring | 6,894.00 |
| 10/16/2015 | Main Street | Par Factoring | 6,894.00 |
| 10/19/2015 | Main Street | Par Factoring | 6,894.00 |
| 10/20/2015 | Main Street | Par Factoring | 6,894.00 |
| 10/21/2015 | Main Street | Par Factoring | 6,894.00 |
| 10/22/2015 | Main Street | Par Factoring | 6,894.00 |
| 10/23/2015 | Main Street | Par Factoring | 6,894.00 |
| 10/26/2015 | Main Street | Par Factoring | 6,894.00 |
| 10/27/2015 | Main Street | Par Factoring | 6,894.00 |
| 10/28/2015 | Main Street | Par Factoring | 6,894.00 |
| 10/29/2015 | Main Street | Par Factoring | 6,894.00 |
| 10/30/2015 | Main Street | Par Factoring | 6,894.00 |
| 11/02/2015 | Main Street | Par Factoring | 6,894.00 |
| 11/03/2015 | Main Street | Par Factoring | 6,894.00 |
| 11/04/2015 | Main Street | Par Factoring | 6,894.00 |
| 11/05/2015 | Main Street | Par Factoring | 6,894.00 |

Case ID: 160502449

| | | | |
|---|---|---|---|
| 11/06/2015 | Main Street | Par Factoring | 6,894.00 |
| 11/09/2015 | Main Street | Par Factoring | 6,894.00 |
| 11/10/2015 | Main Street | Par Factoring | 6,894.00 |
| 11/12/2015 | Main Street | Par Factoring | 6,894.00 |
| 11/13/2015 | Main Street | Par Factoring | 6,894.00 |
| 11/16/2015 | Main Street | Par Factoring | 6,894.00 |
| 11/17/2015 | Main Street | Par Factoring | 6,894.00 |
| 11/18/2015 | Main Street | Par Factoring | 6,894.00 |
| 11/19/2015 | Main Street | Par Factoring | 6,894.00 |
| 11/20/2015 | Main Street | Par Factoring | 6,894.00 |
| 11/23/2015 | Main Street | Par Factoring | 6,894.00 |
| 11/24/2015 | Main Street | Par Factoring | 6,894.00 |
| 11/25/2015 | Main Street | Par Factoring | 6,894.00 |
| 11/27/2015 | Main Street | Par Factoring | 6,894.00 |
| 11/30/2015 | Main Street | Par Factoring | 6,894.00 |
| 12/01/2015 | Main Street | Par Factoring | 6,894.00 |
| 12/02/2015 | Main Street | Par Factoring | 6,894.00 |
| 12/03/2015 | Main Street | Par Factoring | 6,894.00 |
| 12/04/2015 | Main Street | Par Factoring | 6,894.00 |
| 12/07/2015 | Main Street | Par Factoring | 6,894.00 |
| 12/08/2015 | Main Street | Par Factoring | 6,894.00 |
| 12/09/2015 | Main Street | Par Factoring | 6,894.00 |
| 12/10/2015 | Main Street | Par Factoring | 6,894.00 |

Case ID: 160502449

| | | | |
|---|---|---|---|
| 12/11/2015 | Main Street | Par Factoring | 6,894.00 |
| 12/14/2015 | Main Street | Par Factoring | 6,894.00 |
| 12/15/2015 | Main Street | Par Factoring | 6,894.00 |
| 12/16/2015 | Main Street | Par Factoring | 6,894.00 |
| 12/17/2015 | Main Street | Par Factoring | 6,894.00 |
| 12/18/2015 | Main Street | Par Factoring | 6,894.00 |
| 12/21/2015 | Main Street | Par Factoring | 6,894.00 |
| 12/22/2015 | Main Street | Par Factoring | 6,894.00 |
| 12/23/2015 | Main Street | Par Factoring | 6,894.00 |
| 12/24/2015 | Main Street | Par Factoring | 6,894.00 |
| 12/28/2015 | Main Street | Par Factoring | 6,894.00 |
| 12/29/2015 | Main Street | Par Factoring | 6,894.00 |
| 12/30/2015 | Main Street | Par Factoring | 6,894.00 |
| 12/31/2015 | Main Street | Par Factoring | 6,894.00 |
| 01/04/2016 | Main Street | Par Factoring | 6,894.00 |
| 01/05/2016 | Main Street | Par Factoring | 6,894.00 |
| 01/06/2016 | Main Street | Par Factoring | 6,894.00 |
| 01/07/2016 | Main Street | Par Factoring | 6,894.00 |
| 01/08/2016 | Main Street | Par Factoring | 6,894.00 |
| 01/11/2016 | Main Street | Par Factoring | 6,894.00 |
| 01/12/2016 | Main Street | Par Factoring | 6,894.00 |
| 01/13/2016 | Main Street | Par Factoring | 6,894.00 |
| 01/14/2016 | Main Street | Par Factoring | 6,894.00 |
| 01/15/2016 | Main Street | Par Factoring | 6,894.00 |
| 01/19/2016 | Main Street | Par Factoring | 6,894.00 |

Case ID: 160502449

| | | | |
|---|---|---|---|
| 01/20/2016 | Main Street | Par Factoring | 6,894.00 |
| 01/21/2016 | Main Street | Par Factoring | 6,894.00 |
| 01/22/2016 | Main Street | Par Factoring | 6,894.00 |
| 01/25/2016 | Main Street | Par Factoring | 6,894.00 |
| 01/26/2016 | Main Street | Par Factoring | 6,894.00 |
| 01/27/2016 | Main Street | Par Factoring | 6,894.00 |
| 01/28/2016 | Main Street | Par Factoring | 6,894.00 |
| 01/29/2016 | Main Street | Par Factoring | 3,045.00 |
| | | **Total** | **910,100.00** |

45.     The transfer of $620,000 to close the Malvern property directly and proximately caused loss to Plaintiffs as Plaintiffs lost the use of such funds and the ability to derive a profit from lending those funds to legitimate borrowers.  Plaintiffs also suffered a loss from the high interest rate associated with the loan.

46.     The repayment of the Par Loan directly and proximately caused loss to Plaintiffs as Plaintiffs did not need and had never intended to borrow such funds and, further, Plaintiffs lost the use of such funds and the ability to derive a profit from lending those funds to legitimate borrowers.

47.     Goldner, with the help of his brother and Luber, disguised from Plaintiffs the true purpose of the Par Loan; its amount and purpose were never fully disclosed to Goggin.

48.     As such, Luber compounded his already extraordinary set of conflicts by overlaying them with another set of conflicts.  While Plaintiffs Main Street and Goggin were his clients, Luber facilitated the "loan" – which, as it turned out, was also a theft – between Plaintiffs and his other client, Defendant Goldner, which money was to be channeled into another entity, Defendant DOVECOTE, which Luber managed.  Luber did not obtain waiver for these conflicts.

Case ID: 160502449

Indeed, he acted solely in the interests of Defendants DOVECOTE and Goldner *and himself* with respect to this "loan" insofar as Plaintiffs Main Street and Goggin received from DOVECOTE and Goldner none of the protections, security or consideration typical in an arm's length loan. Luber had a duty to his clients, Plaintiffs, to mind their interests, and he failed to do so. Furthermore, defendants stole money from Plaintiffs to which they were not entitled, and Luber, who managed DOVECOTE, facilitated the theft, for the benefit of defendants and himself. Luber failed to inform Plaintiffs of these new conflicts of interest, failed to withdraw from representing defendants or Plaintiffs or both, and, in fact, pursued a course directly contrary and antithetical to the interests of Plaintiffs, and accordingly committed legal malpractice, a failure to exercise the ordinary skill and knowledge related to common professional practice in representing Plaintiffs in connection with the matters set forth herein.

*The Defendants' Fraudulent Schemes are Uncovered*

49. On August 5, 2015, Goldner pled guilty to wire fraud/tax evasion in an unrelated matter involving charges of wire fraud and tax fraud. See attached Exhibit 1. Goldner's sentencing hearing was scheduled for January 28, 2016.

50. Plaintiff Goggin was a key sentencing hearing witness for Goldner, as Goggin was going to testify as to Goldner's honesty and integrity in his work for Main Street, and, equally important, as to Goldner's ability to repay his victims from the money he received as a consultant of Main Street.

51. As Goldner's sentencing hearing approached, his defense counsel, Eugene Tinari, Esq. ("Tinari"), was preparing a submission arguing, in part, that Goldner should avoid incarceration so that he can continue working for Goggin, and thereby repay his victims.

Case ID: 160502449

52.     Luber knew prior to January 28, 2016 that Goldner had stolen/embezzled/taken well more than $150,000 from Main Street without permission of Goggin, and at the very least through his management of DOVECOTE, knew of the extraordinary path the funds had travelled before receiving them.  Yet as already set forth above, Luber took no steps to alert his clients Goggin or Main Street of what was being done to them, nor even to withdraw from representing Goldner, Goggin, and Main Street simultaneously, but rather facilitated the theft from his one set of clients, Plaintiffs, for the benefit of himself and his other set of clients, defendants, including the entity he managed, DOVECOTE.   He also failed to counsel Plaintiffs with respect to the loan.  He compounded that failure by countenancing, enabling, concealing, and papering over what turned out to be an embezzlement of an amount far greater than that.   Luber failed to inform Plaintiffs of these new conflicts of interest, failed to withdraw from representing defendants or Plaintiffs or both, and, in fact, pursued a course directly contrary and antithetical to the interests of Plaintiffs, and accordingly committed legal malpractice, a failure to exercise the ordinary skill and knowledge related to common professional practice in representing Plaintiffs in connection with the matters set forth herein.

53.     Luber compounded his prior bad acts by actively seeking to help Goldner get away with the fraud.  Luber did so in part to protect his valuable payment stream, the 10% of the cash flowing through JDJSL that he has reaped from his relationship with Goldner and his management of JDJSL.  Luber sought to line his own pockets and protect his cousin at the expense of his other clients, the Plaintiffs.

54.     On or around the time just prior to the January 28, 2016 sentencing hearing, Luber prepared a demand note for **$916,000** backdated to July 21, 2015 and presented it to Goggin (the "Demand Note").  This Demand Note had no protection for Plaintiff; it was a sham, and a failure

Case ID: 160502449

to exercise the ordinary skill and knowledge related to common professional practice in representing Plaintiffs in connection with the matters set forth herein.

55.     Luber presented the Demand Note to Goggin before the January 28, 2016 sentencing hearing for Goldner, in the courtroom of Judge Gerald McHugh of the Federal District Court of the Eastern District of Pennsylvania. To be clear: Goggin was aware of, and had approved, a $150,000 loan. However, the Demand Note in the amount of $916,000 was a shock to him.

56.     The maker on the Demand Note is DOVECOTE, which owns the Malvern Property, and is signed by Luber himself as manager of DOVECOTE.

57.     The Demand Note is subject to a first mortgage/lien held by National Capital Management, L.P. in the original principal amount of $1,001,000.

58.     Presented with a demand note for more than six times the amount of the loan as represented to Goggin, Goggin was surprised and suspicious.

59.     Along with the Demand Note, Luber provided two letters on JDJSL letterhead, both of which were backdated to August 3, 2015 and signed by Luber.

60.     It should be noted that the Demand Note neither contemplated nor contained the protections that are standard and customary in such notes. Such protections would have been to the benefit of Luber's clients, Plaintiffs, but to the detriment of his other clients, defendants, including Defendant DOVECOTE, which Luber managed and which was the recipient of all the proceeds from both Goldner's authorized draw of $150,000 and his theft of an amount far greater. As such, Luber once again acted as an attorney to Plaintiffs notwithstanding a severe conflict, and acted to the detriment of Plaintiffs and to his own benefit. Luber failed to inform Plaintiffs of conflicts of interest, failed to withdraw from representing defendants or Plaintiffs or

Case ID: 160502449

both, and, in fact, pursued a course directly contrary and antithetical to the interests of Plaintiffs, and accordingly committed legal malpractice, a failure to exercise the ordinary skill and knowledge related to common professional practice in representing Plaintiffs in connection with the matters set forth herein.

61.    The first letter appeared to be an earlier version of the second letter and characterized the transfers relating to the purchase of the Malvern Property as "an advance payment to [JDJSL] on account of the Cash Flow otherwise due to it as of that date in the amount of $820,000 and that Main Street borrowed funds from a third party for that purpose" (the "First Backdated Letter").

62.    The second letter provided JDJSL's agreement that Main Street could deduct the principal and interest due under the Demand Note from amounts owed by Main Street to JDJSL under the Consulting Agreement (the "Second Backdated Letter").

63.    The Second Backdated Letter provided that

on or about July 21, 2015, Main Street made a loan in the amount of $916,000 to Dovecote, LLC, a Pennsylvania limited liability company, wholly owned by the Goldner Family Trust, which in turn is the majority member of [JDJSL], for the purpose of facilitating the purchase of a residential property by Dovecote, LLC to be occupied by Michael Goldner.

64.    The Second Backdated Letter further acknowledged that "Main Street borrowed funds from a third party for that purpose."

65.    The several backdated letters, and the sham papering of the theft itself, were an extraordinary failure by Luber, insofar as they were a betrayal of his clients, Plaintiffs Main Street and Goggin, for the benefit not only of his clients Defendants Goldner, JDJSL and DOVECOTE, but also himself.  This was a conflicted representation of the basest sort.

Case ID: 160502449

66.     Luber failed to inform Plaintiffs of conflicts of interest, failed to withdraw from representing defendants or Plaintiffs or both, and, in fact, pursued a course directly contrary and antithetical to the interests of Plaintiffs, and accordingly committed legal malpractice, a failure to exercise the ordinary skill and knowledge related to common professional practice in representing Plaintiffs in connection with the matters set forth herein.

67.     In the days thereafter, Goggin began reviewing the books of Main Street. Those books revealed traces of Goldner and Luber's fraudulent scheme relating to the purchase of the Malvern Property and additional transfers of large sums of money from Main Street without Goggin's knowledge or permission.

68.     It became clear to plaintiff Goggin that, in a blatant attempt to cover up their scheme, Goldner and Luber had fabricated the First Backdated Letter and Second Backdated Letter to Main Street "disclosing" the existence of the Par Loan. In short, Luber had begun to protect himself and his cousin, Goldner, by fabricating and backdating documents at the expense of his other clients, the Plaintiffs.

69.     The cover-up attempt, however, was sloppy. Apparently by accident, Luber had sent two versions of the backdated letter.

*Luber Admits His Knowledge of and Participation in the Scheme; Goldner Admits the Scheme*

70.     Shortly thereafter, Goggin met with Goldner and Luber at a restaurant, Butcher and Singer.

71.     Goggin asked Luber to explain why amounts in excess of those authorized by Goggin had been transferred out of Main Street to purchase the Malvern Property.

Case ID: 160502449

72.    <u>Luber acknowledged that he knew that Goldner had taken money that he was not</u> <u>entitled to take</u>.  He then smiled and promised Goggin that he and Goldner were going to make it right after Goldner's final sentencing hearing.

73.    In February 2016, Goggin confronted Goldner directly regarding the stolen funds.

74.    Goldner admitted to Goggin that he had taken the funds without authorization.

75.    Goggin told Goldner that because of this theft and breach of trust, his consulting agreement was terminated immediately, and Goggin then asked him to make it right.  Goldner said that he would endeavor to do so.  Goggin asked him to make a statement under oath.

76.    Luber acknowledged in an email dated February 24, 2016 that the significant conflict of interest that he had been perpetuating for years had suddenly just "kicked in."  He was correct that the conflict had been there all along, but failed (and fails) to understand that the conflict had already kicked in, and done significant damage, years before. See attached Exhibit 2.

*Continued Fall-out*

77.    Both Luber and Goldner appeared at the offices of Plaintiffs' counsel on February 29, 2016.   At that meeting, Luber purported to be acting as an attorney for Goldner, notwithstanding that he admitted several times that he currently still also represented Goggin. Even at this late date, Luber purported to be acting as counsel to Plaintiff Goggin even as he was seeking to protect his cousin, Defendant Goldner, from the consequences of the fraud – and, hand in hand with that, protect himself from the consequences of his own malpractice.

78.    Luber failed to inform Plaintiffs of conflicts of interest that he himself belatedly acknowledged (see Exhibit 2), failed to withdraw from representing defendants or Plaintiffs or both, and, in fact, pursued a course directly contrary and antithetical to the interests of Plaintiffs, and accordingly committed legal malpractice, a failure to exercise the ordinary skill and

Case ID: 160502449

knowledge related to common professional practice in representing Plaintiffs in connection with the matters set forth herein.

79.     At that meeting on February 29, 2016, Goldner and Luber attempted to put a new spin on Goldner's theft, and on Luber's subsequent efforts to paper and legitimize that theft. Both Goldner and Luber admitted that Goldner was not, in fact, a partner of Goggin's. Luber explained that his client, Goggin, and his client, JDJSL through Goldner, worked closely together, and thus, Luber argued, Goggin somehow *had to have known* about Goldner's withdrawal of the funds from Main Street far in excess of the amount due under the Consulting Agreement and for the purchase of the Malvern Property because their relationship was "telepathic."

*The Extent of The Fraud Becomes Clear*

80.     Further review of the books and records of Main Street has determined that Goldner's theft is worse than it initially appeared, and that millions had been transferred out of Main Street for personal use without knowledge or authorization of Plaintiffs.

81.     Goldner effectively treated Main Street as his personal piggy bank, including the transfer of hundreds of thousands of dollars to family members of Goldner.

82.     Goldner also caused Main Street to transfer over a quarter of a million dollars to pay for Goldner's legal fees.

83.     As it turns out, Goldner – the financial consultant to Main Street – had misrepresented the true cash flow of the company to Goggin, so as to allow Goldner to transfer nearly $2.7 million – including the transfers related to the purchase of the Malvern property – out of Main Street without interference from Goggin.

Case ID: 160502449

84.     **Subsequent to the filing of the first complaint in this action, Main Street has determined that something on the order of $9 million (out of something on the order of $10 million invested) has been either misappropriated by Goldner or rendered unrecoverable by Goldner in transactions that are questionable**.

85.     Luber and Reger Rizzo failed to structure the agreements among Plaintiffs and defendants to protect Plaintiffs from the thievery perpetrated by Luber's cousin, Defendant Michael Goldner.   Luber and Reger Rizzo failed to protect Plaintiffs in part because the arrangements he set up made Luber himself a lot of money.   Luber himself acknowledged, from his desk at Reger Rizzo, albeit belatedly, that he had been operating under significant conflicts. (See Exhibit 2).   Luber and Reger Rizzo failed to inform Plaintiffs of conflicts of interest that Luber himself belatedly acknowledged (see Exhibit 2), failed to withdraw from representing defendants or Plaintiffs or both, and, in fact, pursued a course directly contrary and antithetical to the interests of Plaintiffs, and accordingly committed legal malpractice, a failure to exercise the ordinary skill and knowledge related to common professional practice in representing Plaintiffs in connection with the matters set forth herein.   Luber and Reger Rizzo are responsible for all damages that flow therefrom.

86.     As a result of Main Street's loss of funds, Goggin has since personally loaned money to Main Street to ensure its survival.

<div align="center">

**COUNT I**
**FRAUDULENT MISREPRESENTATION**
**(Plaintiffs v. JDJSL, Goldner and Luber – Malvern Property Scheme)**

</div>

87.     Plaintiffs incorporate herein by reference the allegations set forth in the foregoing paragraphs above as though set forth at length herein.

Case ID: 160502449

88.    Goldner and Luber knowingly and intentionally participated in the fraudulent scheme to effectuate and/or cover up the unlawful and illicit transfer by which Goldner and Luber secretly embezzled money from Plaintiffs to or for their own benefit for the purpose of taking unlawful ownership of said assets to be used for their own benefit.

89.    Goldner and Luber acted with the express purpose of keeping their misconduct secret from Plaintiffs.

90.    To that end, Goldner and Luber knowingly, willfully and wantonly misrepresented to Plaintiffs that they required $150,000 to purchase the Malvern Property when, in reality, Goldner and Luber knew they intended to transfer an amount greater than this to fund the shortfall in the purchase price of the Malvern Property.

91.    Since Goldner and Luber were in a close, confidential and/or fiduciary relationship, the amount of the loan, and Goldner and Luber's intent, were material to Plaintiffs' decision to loan the funds to Goldner.

92.    Plaintiffs relied on Goldner and Luber's misrepresentation in agreeing to loan $150,000 to Goldner.

93.    Contrary to Goldner and Luber's stated intent, Goldner and Luber secretly transferred or caused the transfer of money from Plaintiffs to and for the benefit of Goldner and Luber, which deprived Plaintiffs' of their right, possession and use of the transferred money.

94.    Goldner and Luber effectuated the transfer by taking out a loan from Par Funding in Main Street's name at a substantially high interest rate without Plaintiff's knowledge or consent and converted those funds for Goldner and Luber's own use.

95.    Goldner and Luber then repaid the loan and the substantial interest from Main Street's operating account.

96.     Goldner and Luber's actions proximately harmed Plaintiffs through Plaintiffs' loss of the transferred funds and the interest paid on the Par Loan and the loss of use of the stolen funds and interest paid.

97.     Moreover, Goldner and Luber actively concealed the embezzlement of Plaintiffs' funds by creating false documentation which falsely stated disclosure of Goldner and Luber's secret and unlawful actions when disclosure was, in fact, never made.

98.     As a result of Goldner and Luber's actions and the fraudulent transfer of Plaintiffs' funds, a constructive trust should be imposed on the Malvern Property for the benefit of Plaintiffs.

WHEREFORE, Plaintiffs demand judgment in their favor and against JDJSL, Goldner and Luber for compensatory and punitive damages, jointly and severally, in an amount in excess of $50,000, plus pre-judgment and post-judgment interest, costs of suit, and for such other relief as the Court deems equitable and just.


## COUNT II
## CONVERSION
### (Plaintiffs v. DOVECOTE, Luber and Goldner – Malvern Property Scheme)

99.     Plaintiffs incorporate herein by reference the allegations set forth in the foregoing paragraphs above as though set forth at length herein.

100.    By taking out the Par Loan and transferring $620,000 for the benefit of DOVECOTE and Goldner, Goldner, DOVECOTE and Luber deprived Plaintiffs of their right in, or use of, such property.

Case ID: 160502449

101. By causing Main Street to repay the Par Loan with interest to or for the benefit of DOVECOTE and Goldner, Goldner, DOVECOTE and Luber further deprived Plaintiffs of their right in, or use of, such property.

102. Such transfers of Plaintiffs' property were made without their consent.

103. Moreover, DOVECOTE and Goldner acted without lawful justification in making such transfers.

104. As a result of DOVECOTE and Goldner actions and the unlawful transfer of Plaintiffs' funds, and the unlawful receipt of same by DOVECOTE, Goldner, and Luber, a constructive trust should be imposed on the Malvern Property for the benefit of Plaintiffs.

WHEREFORE, Plaintiffs demand judgment in their favor and against DOVECOTE, Goldner and Luber for compensatory and punitive damages, jointly and severally, in an amount in excess of $50,000, plus pre-judgment and post-judgment interest, costs of suit, and for such other relief as the Court deems equitable and just.

### COUNT III
### CIVIL CONSPIRACY
### (Plaintiffs v. JDJSL, DOVECOTE, Goldner, and Luber– Malvern Property Scheme)

105. Plaintiffs incorporate herein by reference the allegations set forth in the foregoing paragraphs above as though set forth at length herein.

106. JDJSL, DOVECOTE, Goldner, and Luber have participated at various times in a single conspiracy centering on the embezzlement of funds by some or all of JDJSL, DOVECOTE, Goldner, and Luber for JDJSL, DOVECOTE, Goldner, and Luber's gain and have actively concealed such embezzlement through false misrepresentations made orally to Plaintiffs and in writing including the backdating of documents purportedly disclosing JDJSL, DOVECOTE, Goldner and Luber's illicit actions.

Case ID: 160502449

107. Goldner was the ringleader of the conspiracy and through the assistance of his cousin, Luber, and the domination and control of defendant entities, Goldner and/or Luber carried out the conspiracy to embezzle funds from Plaintiffs.

108. The actions undertaken by Goldner and Luber in furtherance of the conspiracy were undertaken for their own benefit.

109. Alternatively, the actions of Luber in furtherance of the conspiracy were beyond the scope of his employment as Goldner's attorney and were not performed for any justifiable and proper interest of his "client" but were instead dedicated to furthering the unlawful interests of himself and Goldner by assisting and/or covering up Goldner's embezzlement of Plaintiffs' funds.

110. JDJSL, DOVECOTE, Goldner and Luber shared a common, unlawful purpose of effectuating the unlawful transfer of Main Street's assets to themselves and for their benefit without Plaintiffs' knowledge or consent.

111. Plaintiffs have been and continue to be damaged as a result of JDJSL, DOVECOTE, Goldner and Luber's conspiracy.

WHEREFORE, Plaintiffs demand judgment in their favor and against JDJSL, DOVECOTE, Goldner and Luber for compensatory and punitive damages, jointly and severally, in an amount in excess of $50,000, plus pre-judgment and post-judgment interest, costs of suit, and for such other relief as the Court deems equitable and just.

**COUNT IV**
**UNJUST ENRICHMENT**
**(Plaintiffs v. DOVECOTE and Goldner – Malvern Property Scheme)**

112. Plaintiffs incorporate herein by reference the allegations set forth in the foregoing paragraphs above as though set forth at length herein.

Case ID: 160502449

113. By having $910,100 transferred to or for the benefit of DOVECOTE and Goldner, Plaintiffs conferred a substantial benefit upon DOVECOTE and Goldner.

114. DOVECOTE and Goldner also benefited by Plaintiffs' payment of the interest incurred from the Par Loan, which benefited DOVECOTE and Goldner to the detriment of Plaintiffs.

115. As a result of receiving those funds, DOVECOTE and Goldner were able to purchase the valuable Malvern Property.

116. The retention of such benefits, conferred by and derived from Plaintiff's funds without compensating Plaintiffs would be unjust.

WHEREFORE, Plaintiffs demand judgment in their favor and against DOVECOTE and Goldner for compensatory and punitive damages, jointly and severally, in an amount in excess of $50,000, plus pre-judgment and post-judgment interest, costs of suit, and for such other relief as the Court deems equitable and just.

### COUNT V
### FRAUDULENT MISREPRESENTATION
### (Plaintiffs v. JDJSL and Goldner)

117. Plaintiffs incorporate herein by reference the allegations set forth in the foregoing paragraphs above as though set forth at length herein.

118. Goldner knowingly and intentionally participated in the fraudulent scheme to effectuate and/or cover up the unlawful and illicit transfer by which Goldner secretly embezzled money from Plaintiffs to or for his and JDJSL's own benefit.

119. Goldner also knowingly and intentionally participated in the fraudulent scheme to effectuate and/or cover up the unlawful and illicit transfer by which Goldner secretly caused additional millions of dollars to disappear from Plaintiffs to or for his and JDJSL's own benefit.

Case ID: 160502449

120.    Goldner acted with the express purpose of keeping his misconduct secret from Plaintiffs.

121.    To that end, Goldner knowingly, willfully and wantonly misrepresented to Plaintiffs that the company had a positive Cash Flow (as defined in the Consulting Agreement) so that Goldner could extract funds from Plaintiffs under the guise of compliance with the Consulting Agreement.

122.    Since Goldner and JDJSL were in a close, confidential and/or fiduciary relationship with Plaintiffs, the amount of the Cash Flow as represented by Goldner was material to Plaintiffs' decision to remit payment under the Consulting Agreement.

123.    Plaintiffs relied on Goldner's misrepresentation in agreeing to disperse millions of dollars to Goldner and JDJSL.

124.    In reality, and contrary to Goldner's statements and actions, Main Street was never Cash Flow positive (as defined in the Consulting Agreement), which meant JDJSL was not entitled to anything; such transfers, therefore, deprived Plaintiffs' of their right, possession and use of the transferred money.

125.    Goldner's actions proximately harmed Plaintiffs through Plaintiffs' loss of the transferred funds.

126.    Moreover, at all times relevant to this Complaint, Goldner's fraudulent acts were undertaken on behalf of, and within the course of his agency with JDJSL and to or for its benefit.

127.    Thus, JDJSL is also liable for Goldner's actions to the same extent Goldner is liable.

WHEREFORE, Plaintiffs demand judgment in their favor and against JDJSL and Goldner for compensatory and punitive damages, jointly and severally, in an amount in excess of

Case ID: 160502449

$50,000, plus pre-judgment and post-judgment interest, costs of suit, and for such other relief as the Court deems equitable and just.

## COUNT VI
## CONVERSION
### (Plaintiffs v. JDJSL and Goldner)

128. Plaintiffs incorporate herein by reference the allegations set forth in the foregoing paragraphs above as though set forth at length herein.

129. By causing, pursuant to the Consulting Agreement, Main Street to transfer millions in excess of the amount due under the Consulting Agreement, Goldner deprived Plaintiffs of their right in, or use of, such property.

130. Such transfers of Plaintiffs' property were made without their consent.

131. Moreover, Goldner was without lawful justification in making such transfers.

132. Moreover, at all times relevant to this Complaint, Goldner's fraudulent acts were undertaken on behalf of, and within the course of his agency with JDJSL and to or for its benefit.

133. Thus, JDJSL is also liable for Goldner's actions to the same extent Goldner is liable.

WHEREFORE, Plaintiffs demand judgment in their favor and against JDJSL and Goldner for compensatory and punitive damages, jointly and severally, in an amount in excess of $50,000, plus pre-judgment and post-judgment interest, costs of suit, and for such other relief as the Court deems equitable and just.

## COUNT VII
## UNJUST ENRICHMENT
### (Plaintiffs v. JDJSL, Goldner and Luber)

134. Plaintiffs incorporate herein by reference the allegations set forth in the foregoing paragraphs above as though set forth at length herein.

Case ID: 160502449

135.    By causing, pursuant to the Consulting Agreement, Main Street to transfer millions in excess of the amount due under the Consulting Agreement, Plaintiffs conferred a substantial benefit on JDJSL, Goldner and Luber.

136.    JDJSL, Goldner and Luber accepted, retained, and enjoyed the benefit of some or all of excess transfers from Plaintiffs.

137.    Such transfers of Plaintiffs' property were unlawful and made without their consent, making the retention of the benefits received by JDJSL, Goldner and Luber unjust.

WHEREFORE, Plaintiffs demand judgment in their favor and against JDJSL, Goldner and Luber for compensatory and punitive damages, jointly and severally, in an amount in excess of $50,000, plus pre-judgment and post-judgment interest, costs of suit, and for such other relief as the Court deems equitable and just.

## COUNT VIII
## BREACH OF FIDUCIARY DUTY
### (Plaintiffs v. Goldner)

138.  Plaintiffs incorporate herein by reference the allegations set forth in the foregoing paragraphs above as though set forth at length herein.

139.  Goldner acted as a consultant to Plaintiffs, and effectively ran the day to day operations of Plaintiff Main Street.   He operated with far superior knowledge to Plaintiffs respecting the conduct of the factoring business; he presided over the accounts; he apportioned the money that entered the business and left the business.

140.  As such, Defendant Goldner owed a fiduciary duty to Plaintiffs.

141.  Goldner's duties include obligations of loyalty, due care, fairness, good faith and full disclosure toward Plaintiffs.

142.  Goldner abused that trust and breached his fiduciary duties by, among other things:

Case ID: 160502449

- Favoring his own interests above Plaintiffs';

- Looting Plaintiff Main Street;

143. Goldner's actions constitute breach of fiduciary duty, entitling Plaintiffs to monetary damages. Because Goldner's conduct was done knowingly, intentionally, willfully, wantonly, maliciously, and recklessly, Plaintiffs are entitled to an award of punitive damages.

WHEREFORE, Plaintiffs demand judgment in their favor and against Goldner for compensatory and punitive damages, jointly and severally, in an amount in excess of $50,000, pre-judgment and post-judgment interest, costs of suit, and for such other relief as the Court deems equitable and just.

## COUNT IX
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (Plaintiffs v. Luber)

144. Plaintiffs incorporate herein by reference the allegations set forth in the foregoing paragraphs above as though set forth at length herein.

145. Luber was an attorney facilitating Goldner's consultancy. He established the entity JDJSL, under which Goldner operated.

146. Luber was aware of and provided substantial assistance and encouragement to Goldner's breach of fiduciary duty insofar as he established and ran JDJSL; he established and ran DOVECOTE, the entity that knowingly received and benefited from Goldner's looting of Plaintiff Main Street; he helped Goldner conceal the looting from Plaintiffs; he generated backdated documents seeking to paper the looting from Plaintiffs.

147. Indeed, Luber's services to Goldner were integral to Goldner's breach of fiduciary duty, and without Luber acting in aid at every step, would not have been possible.

Case ID: 160502449

148. Luber aided and abetted Goldner knowingly, intentionally, willfully, wantonly, maliciously and recklessly.

149. Accordingly, Plaintiffs are entitled to an award of punitive damages.

WHEREFORE, Plaintiffs demand judgment in their favor and against Luber for compensatory and punitive damages, jointly and severally, in an amount in excess of $50,000, pre-judgment and post-judgment interest, costs of suit, and for such other relief as the Court deems equitable and just

## COUNT X
## BREACH OF FIDUCIARY DUTY
### (Plaintiffs v. Luber and Reger Rizzo)

150. Plaintiffs incorporate herein by reference the allegations set forth in the foregoing paragraphs above as though set forth at length herein.

151. Luber and Reger Rizzo represented Plaintiffs.

152. As such, Luber and Reger Rizzo owed a fiduciary duty to Plaintiffs.

153. Luber's and Reger Rizzo's duties include obligations of loyalty, due care, fairness, good faith and full disclosure toward Goggin.

154. Luber and Reger Rizzo abused that trust and breached their fiduciary duties by engaging in the following:

- Favoring the interests of Luber, JDJSL, DOVECOTE and Goldner above Plaintiffs as set forth throughout this Complaint, including at the establishment of the consultancy of Goldner, at the time Main Street was caused to borrow money in the Par Loan, at the time money was taken from Main Street for DOVECOTE, at the time the money that was taken was revealed to Plaintiffs, in the papering of the transaction, and in the subsequent efforts to perpetuate and obfuscate the theft;

- Failing to disclose the existence of the Par Loan to Plaintiffs;

- Failing to disclose the looting of Plaintiffs;

36

- Failing to advise Plaintiffs of all material facts surrounding the Par Loan and looting of Plaintiffs;

- Simultaneously representing parties whose interest were directly adverse to Plaintiffs at virtually every stage of their dealings and failing to alert Plaintiffs of the conflicts or withdraw;

- Representing Plaintiffs in transactions and dealings where his own interests were directly adverse to Plaintiffs and he benefited from being adverse to Plaintiffs;

- Setting up an arrangement for obtaining money from JDJSL that was derived from his clients, Plaintiffs, and knowingly benefiting therefrom;

- Managing DOVECOTE, a recipient of funds wrongfully taken from his clients, Plaintiffs, and knowingly benefiting therefrom;

- Creating false documents to conceal a fraud perpetrated on Plaintiffs.

155. Luber's and Reger Rizzo's breaches or failures to perform constitute breach of fiduciary duty, entitling Plaintiffs to monetary damages. To the extent that Luber and Reger Rizzo's conduct, or failure to act, was done knowingly, intentionally, willfully, wantonly, maliciously, and recklessly, Plaintiffs are entitled to an award of punitive damages. Plaintiffs also seek and are entitled to the disgorgement of all fees paid to Luber and Reger Rizzo.

156. Defendant Reger Rizzo is a law firm with offices in Philadelphia County, Pennsylvania, and it is responsible for and vicariously liable for the malpractice of its counsel, Luber.

WHEREFORE, Plaintiffs demand judgment in their favor and against Luber and Reger Rizzo for compensatory and punitive damages, jointly and severally, in an amount in excess of $50,000, plus the disgorgement of fees, pre-judgment and post-judgment interest, costs of suit, and for such other relief as the Court deems equitable and just.

Case ID: 160502449

# COUNT XI
## LEGAL MALPRACTICE
### (Plaintiffs v. Luber and Reger Rizzo)

157.    Plaintiffs incorporate herein by reference the allegations set forth in the foregoing paragraphs above as though set forth at length herein.

158.    Luber and Reger Rizzo were attorneys for Plaintiffs.  Indeed, Plaintiffs placed their utmost confidence and trust in Luber and Reger Rizzo.

159.    Luber and Reger Rizzo were also attorneys for Goldner, JDJSL and DOVECOTE.

160.    Luber and Reger Rizzo represented Plaintiffs at all times relevant to this Complaint, and as set forth herein, while operating under disabling conflicts of interests from the very inception of the dealings between Plaintiffs and defendants as detailed in this Complaint, and summarized as follows:

- Favoring the interests of Luber, JDJSL, DOVECOTE and Goldner above Plaintiffs as set forth throughout this Complaint, including at the establishment of the consultancy of Goldner, at the time Main Street was caused to borrow money in the Par Loan, at the time money was taken from Main Street for DOVECOTE, at the time the money that was taken was revealed to Plaintiffs, in the papering of the transaction, and in the subsequent efforts to perpetuate and obfuscate the theft;

- Failing to disclose the existence of the Par Loan to his clients, Plaintiffs;

- Failing to disclose the looting of his clients, Plaintiffs;

- Failing to advise his clients, Plaintiffs of all material facts surrounding the Par Loan and looting of his clients, Plaintiffs;

- Simultaneously representing parties whose interest were directly adverse to his clients, Plaintiffs at virtually every stage of their dealings and failing to alert Plaintiffs of the conflicts or withdraw;

- Representing Plaintiffs in transactions and dealings where Luber's and Reger Rizzo's own interests were directly adverse to his clients, Plaintiffs and benefitting from being adverse to his clients, Plaintiffs;

- Setting up an arrangement for obtaining money from JDJSL that was derived from his clients, Plaintiffs, and knowingly benefiting therefrom;

38

- Managing DOVECOTE, a recipient of funds wrongfully taken from his clients, Plaintiffs, and knowingly benefiting therefrom;

- Creating false documents to conceal a fraud perpetrated on his clients, Plaintiffs.

161.    Furthermore, Luber and Reger Rizzo discovered that Goldner, JDJSL and DOVECOTE had taken and were taking/embezzling money from Plaintiffs without authorization, right or title.

162.    Luber and Reger Rizzo did not reveal to Plaintiffs their knowledge of the stolen/embezzled/fraudulently obtained money and did not withdraw from representing Plaintiffs or defendants.

163.    Instead, Luber and Reger Rizzo compounded and aided the fraud by seeking to disguise it from Plaintiffs and seeking to draft and backdate documents to legitimize the theft/embezzlement/fraud.

164.    At all times herein, Plaintiffs relied on Luber and Reger Rizzo to act as a fiduciary of their interests, to render appropriate legal services, and to represent them.  Indeed, Plaintiffs placed their utmost confidence and trust in Luber and Reger Rizzo.

165.    Had Luber and Reger Rizzo acted properly, the ordinary skill and knowledge related to common professional practice in representing Plaintiffs in connection with the matters set forth herein, the relationship between defendants and Plaintiffs at the outset would have been negotiated via other counsel so as to afford protections to Plaintiffs; indeed, Luber would not have been an attorney operating under a disabling conflict; Luber would not have been a direct beneficiary, through both DOVECOTE and JDJSL, of the dealings between his clients, Plaintiffs, and his clients, defendants; Plaintiffs would have been properly advised before Goldner attempted to obtain a loan for $150,000; any loan would have been properly

39

documented and secured; the Par Loan would not have been undertaken by Main Street; once undertaken, the details would have been disclosed to Plaintiffs; documents would not have been backdated in concealment of theft and fraud; and Plaintiffs would not have sustained the damages set forth herein.

166.    Luber and Reger Rizzo failed to inform Plaintiffs of their disabling conflicts from the outset, including the pecuniary interest Luber was taking adverse to Plaintiffs, failed to inform them of the bad acts they had uncovered, failed to inform Plaintiffs of the bad acts in which they participated, participated in such bad acts, failed to inform Plaintiffs of the growing, ever worsening and more layered conflicts of interest, failed to withdraw from representing other defendants or Plaintiffs, and, in fact, pursued a course directly contrary and antithetical to the interests of Plaintiffs, and accordingly committed legal malpractice, a failure to exercise the ordinary skill and knowledge related to common professional practice in representing Plaintiffs in connection with the matters set forth herein.

167.    Plaintiffs were damaged insofar as Luber and Reger Rizzo aided and enabled the ongoing theft/embezzlement/fraud of defendants, and in fact participated in that fraud and profited from it.

168.    As set forth herein, defendants' legal malpractice was willful, wanton, and inherently dishonest.

169.    Defendant Reger Rizzo is a law firm with offices in Philadelphia County, Pennsylvania, and it is responsible for and vicariously liable for the malpractice of its counsel, Luber.

WHEREFORE, Plaintiffs demand judgment in their favor and against Luber and Reger Rizzo for compensatory and punitive damages, jointly and severally, in an amount in excess of

Case ID: 160502449

$50,000, plus the disgorgement of fees, pre-judgment and post-judgment interest, costs of suit, and for such other relief as the Court deems equitable and just.

## Jury Trial Demand

Plaintiff hereby demands trial by jury on all issues so triable.

Respectfully submitted by:

KUTAK ROCK LLP

By: */s/ Oliver D. Griffin*
Oliver D. Griffin, Esquire
Peter N. Kessler, Esquire
Karl C. Helgerson, Esquire
Two Liberty Place
50 S. 16th Street Suite 28B
Philadelphia, PA 19107
(215) 299-4384
(215) 981-0719 (fax)
Attorneys for Plaintiff

Dated: July 6, 2016.

Case ID: 160502449

## <u>VERIFICATION</u>

Robert S. Goggin, III, hereby state that the facts in the foregoing Second Amended Complaint are true and correct to the best of my knowledge, information and belief. I understand that the statements made herein are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

Date: 8/15/16

By: _____
Robert S. Goggin, III

Case ID: 160502449

**CERTIFICATE OF SERVICE**

I, Oliver D. Griffin, hereby certify that I have served a true and correct copy of the foregoing Amended Complaint upon all counsel of record this 6th day of July 2016 via the electronic court filing system:

/s/Oliver D. Griffin
OLIVER D. GRIFFIN

Exhibit 1

Case ID: 160502449



THE **FBI** FEDERAL BUREAU OF INVESTIGATION

*Philadelphia Division*

Home • Philadelphia • Press Releases • 2015 • Defunct Real Estate Investment Firm Owner Pleads Guilty to Fraud Charges

### Defunct Real Estate Investment Firm Owner Pleads Guilty to Fraud Charges

**U.S. Attorney's Office**                                                      **Eastern District of Pennsylvania**
August 05, 2015                                                                                        (215) 861-8200

PHILADELPHIA—Michael Goldner, 44, of Glen Mills, PA, pleaded guilty today to a wire fraud and tax evasion after bilking would-be investors. U.S. District Court Judge Gerald A. McHugh scheduled a sentencing hearing for November 16, 2015.

Goldner was an accountant who owned a real estate investment firm, Arcadia Capital Group, Inc., which he started in 2003 with three other people. Arcadia ceased operations in the 4th quarter of 2009 and was out of business since the first quarter of 2009. Prior to 2007 and continuing into 2009, Goldner solicited individuals to invest in various real estate investments. Goldner promised a promissory note to at least one victim which, he said, would provide for regular payments and "occasional payments on the side." One victim invested $25,000 on July 25, 2008, via a wire from his self-directed IRA. That victim then received a promissory note. At the time of that investment, the Arcadia bank account was overdrawn. Immediately following that investment, Goldner repaid three earlier investors and made one payment to LG Financial, which held a mortgage on a property Goldner part owned. Records from the Arcadia bank account show that from 2007 until Goldner closed the account in 2009, nearly $10 million was withdrawn from the account with less than $1 million going toward possible real estate deals. The remaining funds went to Goldner, his associates, and prior investors.

Goldner also owned an interest in Settlement Funds, LLC, and handled the day to day business of the company. Records from the Settlement Funds LLC bank account, which Goldner used after closing the Arcadia account, through April 2010 show that Goldner used the majority of the funds in the account on himself, his associates, and prior investors.

Goldner also had three tax clients from whom he stole funds the clients gave him to forward to the IRS. The clients gave Goldner funds to pay their tax obligations to the IRS but, instead, Goldner used the funds for his personal and business expenses.

Goldner faces a maximum possible sentence of 25 years in prison, possible restitution to the victims of more than $6 million, a $200 special assessment, and up to three years of supervised release.

The case was investigated by Federal Bureau of Investigation and the Internal Revenue Service-Criminal Investigation. It is being prosecuted by Assistant United States Attorney David J. Ignall.

This content has been reproduced from its original source.

**Philadelphia Division Links**
Philadelphia Home

**Contact Us**
- Overview
- Territory/Jurisdiction

**News and Outreach**
- Press Room | Stories
- In Your Community

**About Us**
- Our People & Capabilities
- What We Investigate
- Our Partnerships
- Philadelphia History

**Wanted by the FBI - Philadelphia**

FBI Jobs

Accessibility | eRulemaking | Freedom of Information Act | Legal Notices | Legal Policies and Disclaimers | Links | Privacy Policy | USA.gov | White House
FBI.gov is an official site of the U.S. government, U.S. Department of Justice

Close

Case ID: 160502449

Case ID: 160502449

Exhibit 2

Case ID: 160502449



---

## FW: Document Retention Notice

---

**Joel S. Luber, Esquire** &lt;jluber@regerlaw.com&gt;                    Wed, Feb 24, 2016 at 9:37 AM
To: Michael Goldner &lt;mg@48factoring.com&gt;

You know that Gene called me last night in a state of semi-panic (closely mirroring my own).

Give me a call today please and fill me in, because I have some very significant conflict issues that have now just kicked in. And I need to think about how to prepare to reconcile them, including explaining them to my managing partners.

REGER | RIZZO | DARNALL LLP          Cira Centre, 13th Floor       Joel S. Luber, Esquire
Attorneys at Law                     2929 Arch Street              jluber@regerlaw.com
                                     Philadelphia, Pa 19104
                                     Phone: 215.495.6500           Direct: 215.495.6519
                                     Fax: 215.495.6600
                                     Web: www.regerlaw.com

NEW IRS RULES RESTRICT WRITTEN FEDERAL TAX ADVICE FROM LAWYERS AND ACCOUNTANTS. WE INCLUDE THIS STATEMENT IN ALL OUTBOUND EMAILS BECAUSE EVEN INADVERTENT VIOLATIONS MAY BE PENALIZED. NOTHING IN THIS MESSAGE IS INTENDED TO BE USED, OR MAY BE USED, TO AVOID ANY PENALTY UNDER FEDERAL TAX LAWS. THIS MESSAGE WAS NOT WRITTEN TO SUPPORT THE PROMOTION OR MARKETING OF ANY TRANSACTION. CONTACT THE SENDER IF YOU WISH TO ENGAGE US TO PROVIDE FORMAL WRITTEN ADVICE AS TO TAX ISSUES.
THIS E-MAIL MAY CONTAIN PRIVILEGED, CONFIDENTIAL, COPYRIGHTED, OR OTHER LEGALLY PROTECTED INFORMATION. IF YOU ARE NOT THE INTENDED RECIPIENT (EVEN IF THE E-MAIL ADDRESS ABOVE IS YOURS), YOU MAY NOT USE, COPY, OR RETRANSMIT IT. IF YOU HAVE RECEIVED THIS BY MISTAKE PLEASE NOTIFY US BY RETURN E-MAIL, THEN DELETE. THANK YOU.

**From:** Michael Goldner [mailto:mg@48factoring.com]
**Sent:** Tuesday, February 23, 2016 2:14 PM
**To:** Joel S. Luber, Esquire
**Subject:** Re: FW: Document Retention Notice

Let it pass. We have a misunderstanding and him am I will work out by Thursday night at 530. We just met.

[Quoted text hidden]

48 Factoring is a BBB Accredited Business

Toll Free: 84-48-FACTOR (844-832-2867)

Visit us at: https://48factoring.com/

Twitter   Google+   Facebook

Case ID: 160502449

DISCLAIMER:

This email may contain a price or other contract term for the purchase of receivables.  It does not in any case constitute a binding offer, acceptance or opinion for 48 Factoring Inc.  No employee or agent is authorized to conclude any binding agreement on behalf of 48 Factoring Inc. without express written confirmation by a representative of the company with sufficient faculties to do so.  48 Factoring Inc. accepts no liability for the content of this email, or for the consequences of any actions taken on the basis of the information provided, unless that information is subsequently confirmed in writing.  If you are not the intended recipient you are notified that disclosing, copying, distributing, disseminating, or otherwise taking any action in reliance on the contents of this information is strictly prohibited.

**NOTICE TO PLEAD**

**TO: PLAINTIFFS**
**YOU ARE HEREBY NOTIFIED TO FILE A WRITTEN RESPONSE TO THE ENCLOSED NEW MATTER WITHIN 20 DAYS FROM SERVICE HEREOF OR A JUDGMENT MAY BE ENTERED AGAINST YOU.**

_____
**ATTORNEY/PARTY FILING**

**NOTICE TO PLEAD**

**TO: CODEFENDANTS**
**YOU ARE HEREBY NOTIFIED TO FILE A WRITTEN RESPONSE TO THE ENCLOSED CROSSCLAIMS WITHIN 20 DAYS FROM SERVICE HEREOF OR A JUDGMENT MAY BE ENTERED AGAINST YOU.**

_____
**ATTORNEY/PARTY FILING**

Filed and Attested by the Office of Judicial Records 18 JUL 2017 09:45 am E. FORD

**KANE, PUGH, KNOELL, TROY & KRAMER, LLP**
BY:    PAUL C. TROY, ESQUIRE
Identification No. 60875
510 Swede Street
Norristown, PA  19401
(610) 275-2000

Attorney for Defendant
Reger Rizzo & Darnell LLP

| | | |
|---|---|---|
| MAIN STREET BUSINESS FUNDING, LLC AND ROBERT S. GOGGIN, III | : | COURT OF COMMON PLEAS OF PHILADELPHIA, PA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. GOLDNER; JDJSL LLC; DOVECOTE LANE, LLC; JOEL S. LUBER; AND REGER RIZZO & DARNELL LLP | : | May Term, 2016 No. 002449 |

## DEFENDANT REGER RIZZO & DARNELL, LLP'S ANSWER WITH NEW MATTER TO PLAINTIFFS' SECOND AMENDED COMPLAINT

00125531.1

1

Case ID: 160502449

Defendant, Reger Rizzo & Darnell, LLP ("Answering Defendant"), by and through its attorneys, Kane, Pugh, Knoell, Troy, & Kramer, LLP, hereby file this Answer with New Matter and Crossclaims to Plaintiffs' Second Amended Complaint.

## INTRODUCTION

Denied. The averments contained in the Second Amended Complaint's Introduction are denied in their entirety. On the contrary, at all times, Answering Defendant, Reger, Rizzo & Darnell, LLP, provided competent legal advice to all represented parties within the scope of the agreed upon representation and free of any impermissible conflicts of interest. Plaintiffs' characterizations of any writings referred to in the Introduction are denied as documents which speak for themselves. Furthermore, the averments in the Introduction are conclusions of law to which no response is required.

## PARTIES

1-2. Denied. After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments, and therefore these averments are denied.

3-5. Denied. These averments are not addressed to Answering Defendant. In any event, after reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments, and therefore these averments are denied.

6. Admitted in part, denied in part. It is admitted that since February 2014, Defendant Luber was a licensed professional and non-equity partner employed by Answering Defendant, which has a business office at 2929 Arch Street, Philadelphia, Pennsylvania, 19104. It is admitted that Luber, while employed by Answering Defendant, served as counsel for

Case ID: 160502449

Plaintiffs with the qualification that the scope and length of the representation is defined by the respective fee agreements and understandings of the parties. The remaining averments are denied. After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments, and therefore these averments are denied.

7.     Admitted in part, denied in part.  It is admitted that Answering Defendant is a Pennsylvania limited liability partnership with seven offices. It is admitted that Luber was a non-equity partner employed by Answering Defendant and has been since February 2014.  It is admitted that Answering Defendant is a law firm with offices in Philadelphia, County, Pennsylvania.  It is admitted that Plaintiffs are asserting a professional liability claim against Answering Defendant the merits of which are denied. The remaining averments are denied. It is denied that Answering Defendant's offices are located in four states, as they are located in five states. It is denied that at all relevant times in the Second Amended Complaint that Defendant Luber was acting within the scope of his authority as a partner of Answering Defendant, and was acting pursuant to his employment by and relationship with Answering Defendant.   On the contrary, if there was a Fraudulent Misrepresentation, Conversion, Civil Conspiracy, Unjust Enrichment or Aiding and Abetting of a Fiduciary Duty as alleged by Plaintiffs in the Second Amended Complaint (which is denied), any conduct by Defendant Luber giving rise to the causes of action was outside the course and scope of any employment with Answering Defendant. Furthermore, without reference to specific conduct at a specified time, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of this averment, and therefore this averment is denied. The averments of this paragraph

Case ID: 160502449

are also deemed denied to the extent they are conclusions of law to which no response is required.

## **JURISDICTION AND VENUE**

8-10. Denied. These averments are conclusions of law to which no response is required. If it is later judicially determined that a response is so required, the averments contained in these paragraphs are specifically denied and strict proof thereof is demanded at trial, if material.

## **THE FACTS**

### *Background[1]*

11-12. Denied. After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments, and therefore these averments are denied.

13. Denied. It is denied at all times relevant to the complaint, Defendant Luber was a partner at Answering Defendant, was acting within the scope of his authority as a partner of the Answering Defendant, and was acting pursuant to his employment by and relationship with the Answering Defendant. On the contrary, if there was a Fraudulent Misrepresentation, Conversion, Civil Conspiracy, Unjust Enrichment or Aiding and Abetting of a Fiduciary Duty as alleged by Plaintiffs in the Second Amended Complaint (which is denied), any conduct by Defendant Luber giving rise to those causes of action was outside the course and scope of any employment with Answering Defendant. Furthermore, without reference to specific conduct at a specified time, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of this averment, and therefore this averment is denied in its entirety.

---

[1] The headings which appear in this Answer are the headings contained within Plaintiffs' Second Amended Complaint. The allegations contained within all headings included in Plaintiffs' Second Amended Complaint are denied.

Case ID: 160502449

14.     Denied.  The allegations contained in this paragraph are conclusions of law to which no response is required. Without waiver and by way of further response, Answering Defendant incorporates by reference its Answer to Paragraph 13 as if fully stated herein.

15.     Denied.     After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

16.     Denied.     After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

17.     Denied.     After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

*Setting Up Main Street's Business*

18.     Denied.     After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

19.     Denied.     After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material. The averments of this paragraph are also deemed denied to the extent they are conclusions of law to which no response is required.

20.     Denied.     After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

Case ID: 160502449

21.    Denied.    After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

22.    Denied.    After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material. The averments of this paragraph are also deemed denied as conclusions of law to which no response is required.

23.    Denied.    The allegations contained in this paragraph are deemed denied as conclusions of law to which no response is required.  If it is later judicially determined that a response is so required, the averments are specifically denied and strict proof thereof is demanded at trial, if material.

24.    Denied. Plaintiffs' characterizations of the Consulting Agreement are denied as it is a writing which speaks for itself.

25.    Denied. Plaintiffs' characterizations of the Consulting Agreement are denied as it is a writing which speaks for itself.

26.    Denied. Plaintiffs' characterizations of the Consulting Agreement are denied as it is a writing which speaks for itself.

27.    Denied.    After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material. The averments of this paragraph are also deemed denied to the extent they are conclusions of law to which no response is required.

Case ID: 160502449

28.     Denied.     After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

*The Malvern Property Fraudulent Scheme*

29.     Denied.     The allegations contained in this paragraph are deemed denied as conclusions of law to which no response is required.  If it is later judicially determined that a response is so required, the averments are specifically denied and strict proof thereof is demanded at trial, if material.

30.     Denied.     After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

31.     Denied.     After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

32.     Denied.     After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

33.     Denied.     After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

34.     Denied.     After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

Case ID: 160502449

35.     Denied.    After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

36.     Denied.    After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material. The averments of this paragraph are also deemed denied to the extent they are conclusions of law to which no response is required.

37.     Denied.    The allegations contained in this paragraph are deemed denied as conclusions of law to which no response is required.  If it is later judicially determined that a response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material.

38.     Denied.    After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

39.     Denied.    The allegations contained in this paragraph are deemed denied as conclusions of law to which no response is required.  If it is later judicially determined that a response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material.

40.     Denied.    After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

Case ID: 160502449

41. Denied. After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

42. Denied. After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

43. Denied. After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material. The averments of this paragraph are also deemed denied to the extent they are conclusions of law to which no response is required.

44. Denied. After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

45. Denied. The allegations contained in this paragraph are deemed denied as conclusions of law to which no response is required. If it is later judicially determined that a response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material.

46. Denied. The allegations contained in this paragraph are deemed denied as conclusions of law to which no response is required. If it is later judicially determined that a response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material.

47. Denied. The allegations contained in this paragraph are deemed denied as conclusions of law to which no response is required. If it is later judicially determined that a

Case ID: 160502449

response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material.

48.    Denied.    The allegations contained in this paragraph are deemed denied as conclusions of law to which no response is required.  If it is later judicially determined that a response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material.

*The Defendants' Fraudulent Schemes are Uncovered*

49.    Denied.    Plaintiffs' characterizations of Exhibit 1 are denied as it is a writing which speaks for itself. After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

50.    Denied.    After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

51.    Denied.    After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

52.    Denied.    The allegations contained in this paragraph are deemed denied as conclusions of law to which no response is required.  If it is later judicially determined that a response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material.

53.    Denied.    The allegations contained in this paragraph are deemed denied as conclusions of law to which no response is required.  If it is later judicially determined that a

Case ID: 160502449

response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material.

54. Denied. Plaintiffs' characterizations of the Demand Note are denied as it is a writing which speaks for itself. Furthermore, the allegations contained in this paragraph are deemed denied as conclusions of law to which no response is required. If it is later judicially determined that a response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material.

55. Denied. After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

56. Denied. Plaintiffs' characterizations of the Demand Note are denied as it is a writing which speaks for itself. After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

57. Denied. Plaintiffs' characterizations of the Demand Note are denied as it is a writing which speaks for itself. After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

58. Denied. After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

Case ID: 160502449

59.     Denied.    After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

60.     Denied. Plaintiffs' characterizations of the Demand Note are denied as it is a writing which speaks for itself. Furthermore, the allegations contained in this paragraph are deemed denied as conclusions of law to which no response is required.  If it is later judicially determined that a response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material.

61.     Denied. Plaintiffs' characterizations of the "First Backdated Letter" are denied as it is a writing which speaks for itself. After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

62.     Denied. Plaintiffs' characterizations of the "Second Backdated Letter" are denied as it is a writing which speaks for itself. After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

63.     Denied. Plaintiffs' characterizations of the "Second Backdated Letter" are denied as it is a writing which speaks for itself. After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

64.     Denied. Plaintiffs' characterizations of the "Second Backdated Letter" are denied as it is a writing which speak for itself. After reasonable investigation, Answering Defendant is

Case ID: 160502449

without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

65. Denied. The allegations contained in this paragraph are deemed denied as conclusions of law to which no response is required. If it is later judicially determined that a response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material.

66. Denied. The allegations contained in this paragraph are deemed denied as conclusions of law to which no response is required. If it is later judicially determined that a response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material.

67. Denied. After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material. The averments of this paragraph are also deemed denied as conclusions of law to which no response is required.

68. Denied. After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material. The averments of this paragraph are also deemed denied as conclusions of law to which no response is required.

69. Denied. After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material. The averments of this paragraph are also deemed denied as conclusions of law to which no response is required.

Case ID: 160502449

70.     Denied.     After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

71.     Denied.     After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

72.     Denied.     After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

73.     Denied.     After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

74.     Denied.     After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

75.     Denied.     After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

76.     Denied. Plaintiffs' characterizations of the February 24, 2016 email are denied as it is a writing which speaks for itself. Furthermore, the allegations contained in this paragraph are deemed denied as conclusions of law to which no response is required.  If it is later judicially

Case ID: 160502449

determined that a response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material.

<p align="center">*Continued Fall-out*</p>

77.     Denied.    After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

78.     Denied. Plaintiffs' characterizations of the February 24, 2016 email are denied as it is a writing which speaks for itself. Furthermore, the allegations contained in this paragraph are deemed denied as conclusions of law to which no response is required.  If it is later judicially determined that a response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material.

79.     Denied.    After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

<p align="center">*The Extent of the Fraud Becomes Clear*</p>

80.     Denied.    After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

81.     Denied.    After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

Case ID: 160502449

82.     Denied.     After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

83.     Denied.     After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

84.     Denied.     After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

85.     Denied. It is specifically denied Answering Defendant failed to inform Plaintiffs of conflicts of interest and/or pursued a course directly contrary and antithetical to the interests of Plaintiffs, and accordingly committed legal malpractice, and/or failed to exercise the ordinary skill and knowledge related to common professional practice in representing Plaintiffs. The allegations contained in this paragraph are deemed denied in their entirety as conclusions of law to which no response is required.  If it is later judicially determined that a response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material.

86.     Denied.     After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments and strict proof thereof is demanded at trial, if material.

## COUNT I
### FRAUDULENT MISREPRESENTATION
### (Plaintiffs v. JDJSL, Goldner and Luber)

87.     Answering Defendant hereby incorporates its Answer to the preceding paragraphs as though the same were more fully set herein at length.

Case ID: 160502449

88-98.  Denied.  These averments are not addressed to Answering Defendant, and, in any event, are denied.  The allegations contained in this paragraph are also deemed denied as conclusions of law to which no response is required. If it is later judicially determined that a response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material. If it is later determined that Luber made a Fraudulent Misrepresentation to Plaintiffs (which is denied), any conduct by Defendant Luber giving rise to the Fraudulent Misrepresentation was outside the course and scope of any employment with Answering Defendant.

**WHEREFORE,** Answering Defendant respectfully requests that this Honorable Court dismiss Plaintiffs' Second Amended Complaint, with prejudice.

<div align="center">

**COUNT II**
**CONVERSION**
**(Plaintiffs v. DOVECOTE, Luber and Goldner)**

</div>

99.  Defendant hereby incorporates its Answer to the preceding paragraphs as though the same were more fully set herein at length.

100.-104.  These averments are not addressed to Answering Defendant, and, in any event, are denied.  The allegations contained in this paragraph are also deemed denied as conclusions of law to which no response is required. If it is later judicially determined that a response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material. If it is later determined that Luber is liable for Conversion to Plaintiffs (which is denied), any conduct by Defendant Luber giving rise to the Conversion was outside the course and scope of any employment with Answering Defendant.

**WHEREFORE,** Answering Defendant respectfully requests that this Honorable Court dismiss Plaintiffs' Second Amended Complaint, with prejudice.

## COUNT III
## CIVIL CONSPIRACY
### (Plaintiffs v. JDJSL, DOVECOTE, Luber and Goldner)

105.    Defendant hereby incorporates its Answer to the preceding paragraphs as though the same were more fully set herein at length.

106.-111.  Denied.  These averments are not addressed to Answering Defendant, and, in any event, are denied.  The allegations contained in this paragraph are also deemed denied as conclusions of law to which no response is required. If it is later judicially determined that a response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material. If it is later determined that Luber engaged in a Civil Conspiracy (which is denied), any conduct by Defendant Luber giving rise to the Civil Conspiracy was outside the course and scope of any employment with Answering Defendant.

**WHEREFORE,** Answering Defendant respectfully requests that this Honorable Court dismiss Plaintiffs' Second Amended Complaint, with prejudice.

## COUNT IV
## UNJUST ENRICHMENT
### (Plaintiffs v. DOVECOTE and Goldner)

112.    Defendant hereby incorporates its Answer to the preceding paragraphs as though the same were more fully set herein at length.

113.-116.  Denied.  These averments are not addressed to Answering Defendant, and, in any event, are denied.  The allegations contained in this paragraph are also deemed denied as conclusions of law to which no response is required. If it is later judicially determined that a

Case ID: 160502449

response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material.

**WHEREFORE,** Answering Defendant respectfully requests that this Honorable Court dismiss Plaintiffs' Second Amended Complaint, with prejudice.

## COUNT V
## FRAUDULENT MISREPRESENTATION
### (Plaintiffs v. JDJSL and Goldner)

117. Defendant hereby incorporates its Answer to the preceding paragraphs as though the same were more fully set herein at length.

118.-127. Denied. These averments are not addressed to Answering Defendant, and, in any event, are denied. The allegations contained in this paragraph are also deemed denied as conclusions of law to which no response is required. If it is later judicially determined that a response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material.

**WHEREFORE,** Answering Defendant respectfully requests that this Honorable Court dismiss Plaintiffs' Second Amended Complaint, with prejudice.

## COUNT VI
## CONVERSION
### (Plaintiffs v. JDJSL and Goldner)

128. Defendant hereby incorporates its Answer to the preceding paragraphs as though the same were more fully set herein at length.

129.-133. Denied. These averments are not addressed to Answering Defendant, and, in any event, are denied. The allegations contained in this paragraph are also deemed denied as conclusions of law to which no response is required. If it is later judicially determined that a

Case ID: 160502449

response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material.

**WHEREFORE,** Answering Defendant respectfully requests that this Honorable Court dismiss Plaintiffs' Second Amended Complaint, with prejudice.

## COUNT VII
## UNJUST ENRICHMENT
### (Plaintiffs v. JDJSL, Goldner, and Luber)

134.    Defendant hereby incorporates its Answer to the preceding paragraphs as though the same were more fully set herein at length.

135.-137. Denied.  These averments are not addressed to Answering Defendant, and, in any event, are denied.  The allegations contained in this paragraph are also deemed denied as conclusions of law to which no response is required. If it is later judicially determined that a response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material. If it is later determined that Luber is liable for Unjust Enrichment (which is denied), any conduct by Defendant Luber giving rise to the Unjust Enrichment was outside the course and scope of any employment with Answering Defendant.

**WHEREFORE,** Answering Defendant respectfully requests that this Honorable Court dismiss Plaintiffs' Second Amended Complaint, with prejudice.

## COUNT VIII
## BREACH OF FIDUCIARY DUTY
### (Plaintiffs v. Goldner)

138.    Defendant hereby incorporates its Answer to the preceding paragraphs as though the same were more fully set herein at length.

139.-143. Denied.  These averments are not addressed to Answering Defendant, and, in any event, are denied.  The allegations contained in this paragraph are also deemed denied as

Case ID: 160502449

conclusions of law to which no response is required. If it is later judicially determined that a response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material.

**WHEREFORE,** Answering Defendant respectfully requests that this Honorable Court dismiss Plaintiffs' Second Amended Complaint, with prejudice.

## COUNT IX
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (Plaintiffs v. Luber)

144. Defendant hereby incorporates its Answer to the preceding paragraphs as though the same were more fully set herein at length.

145.-149. Denied. These averments are not addressed to Answering Defendant, and, in any event, are denied. The allegations contained in this paragraph are also deemed denied as conclusions of law to which no response is required. If it is later judicially determined that a response is so required, said averments are specifically denied and strict proof thereof is demanded at trial, if material. If it is later determined that Luber Aided and Abetted a Breach of a Fiduciary Duty (which is denied), any conduct by Defendant Luber giving rise to the Aiding and Abetting a Breach of a Fiduciary Duty was outside the course and scope of any employment with Answering Defendant.

**WHEREFORE,** Answering Defendant respectfully requests that this Honorable Court dismiss Plaintiffs' Second Amended Complaint, with prejudice.

## COUNT X
## BREACH OF FIDUCIARY DUTY
### (Plaintiffs v. Luber and Reger Rizzo)

150. Defendant hereby incorporates its Answer to the preceding paragraphs as though the same were more fully set herein at length.

Case ID: 160502449

151. Admitted with the qualification that the scope of the representation is defined by the respective fee agreements and understandings of the parties.

152. Denied. The averments contained in this paragraph are conclusions of law to which no response is required.

153. Denied. The averments contained in this paragraph are conclusions of law to which no response is required.

154. Denied. It is specifically denied that Answering Defendant abused Plaintiffs' trust and breached its fiduciary duties. Furthermore, the averments contained in this paragraph are deemed denied in their entirety as conclusions of law to which no response is required.

155. Denied. It is specifically denied that Answering Defendant breached its fiduciary duties. It is also specifically denied that any conduct of Answering Defendant, or alleged failure to act, was done knowingly, intentionally, willfully, wantonly, maliciously, and recklessly. It is also specifically denied that Plaintiffs are entitled to an award of punitive damages or disgorgement of all fees paid to Answering Defendant. Furthermore, the averments contained in this paragraph are deemed denied in their entirety as conclusions of law to which no response is required.

156. Admitted in part, denied in part. It is admitted only that Answering Defendant is a law firm with offices in Philadelphia County. The remaining averments in this paragraph are deemed denied in their entirety as they are conclusions of law to which no response is required. If it is later judicially determined that a response is so required, the remaining averments are specifically denied and strict proof thereof is demanded at trial, if material.

**WHEREFORE,** Answering Defendant respectfully requests that this Honorable Court dismiss Plaintiffs' Second Amended Complaint, with prejudice.

Case ID: 160502449

## COUNT XI
## LEGAL MALPRACTICE
### (Plaintiffs v. Luber and Reger Rizzo)

157.    Defendant hereby incorporates its Answer to the preceding paragraphs as though the same were more fully set herein at length.

158.    Admitted in part, denied in part.  It is admitted only that Luber and Answering Defendant were attorneys for Plaintiffs with the qualification that the scope and length of the representation is defined by the respective fee agreements and understandings of the parties. The remaining averments of this paragraph are denied. After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining averments.  Hence, said averments are denied and strict proof thereof is demanded at trial, if material.

159.    Denied. After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining averments.  Hence, said averments are denied and strict proof thereof is demanded at trial, if material.

160.    Admitted in part, denied in part.  It is admitted only that Luber and Answering Defendant were attorneys for Plaintiffs with the qualification that the scope and length of the representation is defined by the respective fee agreements and understandings of the parties.  It is denied that they represented Plaintiffs "at all relevant times to [the] Complaint."  The remaining averments are conclusions of law to which no response is required.  If it is later judicially determined that a response is so required, the remaining averments contained in this paragraph are specifically denied.

Case ID: 160502449

161. Denied. It is denied Answering Defendant discovered that Goldner, JDJSL and DOVECOTE had taken and were taking/embezzling money from Plaintiffs without authorization, right or title. The remaining averments are not addressed to Answering Defendant, and, in any event, are denied. After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining averments. Hence, said averments are denied and strict proof thereof is demanded at trial, if material.

162. Denied. It is specifically denied that Answering Defendant had knowledge of allegedly "stolen/embezzled/fraudulently obtained money and did not withdraw from representing Plaintiffs or Defendants. The remaining averments are not addressed to Answering Defendant, and, in any event, are denied. After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining averments. Hence, said averments are denied and strict proof thereof is demanded at trial, if material.

163. Denied. It is specifically denied Answering Defendant compounded and aided fraud by seeking to disguise it from Plaintiffs and seeking to draft and backdate documents to legitimize the theft/embezzlement/fraud. Furthermore, these averments are deemed denied as conclusions of law to which no response is necessary. If it is later judicially determined that a response is so required, the averments are specifically denied in their entirety and strict proof thereof is demanded at trial, if material.

164. Denied. After reasonable investigation, Answering Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of these averments. Hence, said averments are denied and strict proof thereof is demanded at trial, if material.

Case ID: 160502449

165.    Denied.  It is specifically denied that Answering Defendant acted improperly or failed to exercise ordinary skill and knowledge related to common professional practice in representing Plaintiffs. Furthermore, these averments are deemed denied as conclusions of law to which no response is necessary.  If it is later judicially determined that a response is so required, the averments are specifically denied in their entirety and strict proof thereof is demanded at trial, if material.

166.    Denied.  It is specifically denied that Answering Defendant engaged in disabling conflicts of interest or participated in bad acts. Furthermore, these averments are deemed denied as conclusions of law to which no response is necessary.  If it is later judicially determined that a response is so required, the averments are specifically denied in their entirety and strict proof thereof is demanded at trial, if material.

167.    Denied. It is specifically denied Answering Defendant aided and enabled the ongoing theft/embezzlement/fraud of Defendants, and in fact participated in that fraud and profited from it.  Furthermore, these averments are deemed denied as conclusions of law to which no response is necessary.  If it is later judicially determined that a response is so required, the averments are specifically denied in their entirety and strict proof thereof is demanded at trial, if material.

168.    Denied.  It is specifically denied Answering Defendant committed legal malpractice or that its conduct was willful, wanton, and inherently dishonest. Furthermore, these averments are deemed denied as conclusions of law to which no response is necessary.  If it is later judicially determined that a response is so required, the averments are specifically denied in their entirety and strict proof thereof is demanded at trial, if material.

Case ID: 160502449

169.    Admitted in part, denied in part.  It is admitted only that Answering Defendant is a law firm with offices in Philadelphia County. The remaining averments in this paragraph are deemed denied in their entirety as they are conclusions of law to which no response is required. If it is later judicially determined that a response is so required, the remaining averments are specifically denied and strict proof thereof is demanded at trial, if material.

**WHEREFORE,** Answering Defendant respectfully requests that this Honorable Court dismiss Plaintiffs' Second Amended Complaint, with prejudice.

## NEW MATTER

170.    The Second Amended Complaint fails to state a cause of action upon which relief can be granted.

171.    Plaintiffs' claims are barred and/or limited pursuant to the Fair Share Act, 42 Pa.C.S. § 7102, and Answering Defendant hereby asserts all of the rights and defenses available under the Act.

172.    Plaintiffs are barred from recovery by failure to act in a commercially reasonable manner.

173.    Plaintiffs are barred from recovery by acquiescence.

174.    Plaintiffs' Complaint fails to state a cause of action against Answering Defendant for assumpsit, professional liability, nonprofessional negligence, or agency.

175.    Plaintiffs' Second Amended Complaint fails to state a claim against Answering Defendant for breach of a fiduciary duty.

176.    Plaintiffs' Second Amended Complaint is barred, in whole or in part, by the statute of limitations.

Case ID: 160502449

177.   Plaintiffs' claims against Answering Defendant are barred, in whole or in part, as a matter of law.

178.   Plaintiffs' Second Amended Complaint is barred, in whole or in part, by the doctrine of laches.

179.   Plaintiffs' claims against Answering Defendant are barred, in whole or in part, by the doctrines of waiver and/or estoppel and/or consent.

180.   Plaintiffs' claims against Answering Defendant are barred, in whole or in part, by the doctrine of justification.

181.   Plaintiffs' claims against Answering Defendant are barred, in whole or in part, by the doctrines of privilege, absolute privilege and/or immunity.

182.   Plaintiffs' damages and/or losses, if any, were caused, in whole or in part, by Plaintiffs themselves and/or were the result of Plaintiffs' own actions, inactions and/or conduct.

183.   Plaintiffs' damages and/or losses, if any, were caused in whole, or in part, by Plaintiffs' agents and/or representatives.

184.   Plaintiffs' damages and/or losses, if any, were caused by individuals and/or persons over whom Answering Defendant had no right, ability, and/or authority to control and/or right to control.

185.   Plaintiffs' claims in the Second Amended Complaint against Answering Defendant are barred, in whole or in part, by the economic loss doctrine.

186.   Plaintiffs' claims in the Second Amended Complaint against Answering Defendant are barred, in whole or in part, by the parol evidence rule.

187.   Plaintiffs' claims in the Second Amended Complaint against Answering Defendant are barred, in whole or in part, by the gist of the action doctrine.

Case ID: 160502449

188. Plaintiffs' claims in the Second Amended Complaint against Answering Defendant are barred, in whole or in part, by the Plaintiffs' failure to mitigate damages and/or losses.

189. Plaintiffs' claims in the Second Amended Complaint against Answering Defendant are barred, in whole or in part, by the affirmative defense of collectability.

190. Plaintiffs' claims in the Second Amended Complaint against Answering Defendant are barred, in whole or in part, by superseding and/or intervening causes.

191. Plaintiffs' claims in the Second Amended Complaint against Answering Defendant are barred, in whole or in part, by the doctrines of contributory and/or comparative negligence.

192. Plaintiffs have not suffered nor incurred any damages and/or losses as a matter of law.

193. Plaintiffs cannot and will not be able to prove any actual damages and/or losses as a result of any actions, inactions and/or conduct, real and/or alleged, of Answering Defendant.

194. Answering Defendant avers that the proximate cause of Plaintiffs' injuries was the action or omission of persons over whom Answering Defendant had no control, or right of control.

195. Plaintiffs' claims are barred and/or reduced by the Pennsylvania Comparative Negligence Act.

196. Plaintiffs sustained no injury in fact.

197. Plaintiffs' damages were not caused by any action or inaction on the part of Answering Defendant.

Case ID: 160502449

198.   Plaintiffs are not entitled to an award of costs and/or interest as an item of damage.

199.   Plaintiffs' Second Amended Complaint is barred by the doctrine of assumption of the risk.

200.   Answering Defendant hereby pleads the statute of frauds as a full or partial defense to Plaintiffs' Second Amended Complaint.

201.   Answering Defendant was entitled to rely in good faith upon the statement of facts made to them by their client, and were not under a duty to institute an inquiry for the purpose of verifying its statements or the statements of its agents before giving advice thereon.

202.   Answering Defendant hereby pleads the Pennsylvania Rules of Professional Conduct as a full or partial defense to Plaintiffs' Second Amended Complaint.

203.   Plaintiffs lack standing to bring any of the allegations in the Second Amended Complaint.

204.   Plaintiffs' Second Amended Complaint fails to allege cognizable damages.

205.   Answering Defendant made no misrepresentations to Plaintiffs.

206.   Plaintiffs did not rely on any representations made by Answering Defendant.

207.   Answering Defendant did not owe Plaintiffs any duty.

208.   The Second Amended Complaint is barred in whole or in part on the ground that Answering Defendant had no knowledge that any other party had made any misrepresentations or had engaged in any fraudulent or wrongful conduct as alleged, all such liability being expressly denied.

209.   The Second Amended Complaint is barred in whole or in part based on the defense of estoppel.

Case ID: 160502449

210.    The Second Amended Complaint is barred in whole or in part based on the defense of waiver.

211.    Plaintiffs' Second Amended Complaint is barred in whole or in part on the ground that Answering Defendant had no knowledge of any tortious conduction by any other party.

212.    The Second Amended Complaint is bared in whole or in part on the ground that Plaintiffs' alleged losses and damages must be reduced by setting off all amounts previously collected and paid or that will in the future be collected or paid from sources not involved in this litigation.

213.    Any loss suffered by Plaintiffs was the result of ineffective management of the business and/or market conditions.

214.    The scope of Answering Defendant's representation of Plaintiff, Main Street Business Funding, LLC, is outlined in the February 17, 2014 fee agreement letter which is attached as Exhibit "A".

215.    The scope of Answering Defendant's representation of Plaintiff, Robert S. Goggin, is outlined in the April 22, 2014 fee agreement letter which is attached as Exhibit "B".

216.    Answering Defendant was entitled to rely in good faith upon the statement of facts made to them by Plaintiffs, and are not under a duty to institute an inquiry for the purpose of verifying Plaintiffs' statements before giving advice thereon.

217.    Answering Defendant hereby pleads the Pennsylvania Rules of Professional Conduct as a full or partial defense to Plaintiffs' Second Amended Complaint.

218.    Plaintiffs may have already entered into a release and/or voluntary discharge with other individuals, entities or judicial bodies which may have the effect of discharging any

Case ID: 160502449

liability of Answering Defendant to the extent that facts as developed in future discovery may implicate.

219. Plaintiffs' claims are barred and/or limited under the doctrine of failure of consideration to the extent that facts as developed in future discovery may implicate.

220. Answering Defendant hereby asserts Rule of Professional Conduct 1.2, 1.7, 1.8, 1.9, and 1.10 as full or partial defenses to Plaintiffs' Second Amended Complaint.

221. Plaintiffs specifically consented to what they now allege were conflicts of interest, and waived the conflicts of interest.

222. Answering Defendant hereby incorporates by reference and pleads as a full and complete defense to Plaintiffs' Second Amended Complaint the waiver of conflicts contained in the fee agreement letters signed by Plaintiffs which are attached hereto as Exhibits A and B.

223. Answering Defendant hereby incorporates by reference and pleads as a full and complete defense to Plaintiffs' Second Amended Complaint the waiver of conflicts in the Consulting Agreement signed by Plaintiffs which is attached hereto as Exhibits "C".

224. The alleged lost assets belonged to Plaintiff Main Street Business Funding, LLC and did not belong to Goggin.

225. The alleged damages were not experienced by Goggin.

226. Plaintiff Goggin does not have standing to assert claims.

**WHEREFORE,** Defendant, Reger Rizzo & Darnell, LLP, denies any and all other allegations of Plaintiffs' Second Amended Complaint and requests that Judgment be entered in its favor.

### CROSSCLAIMS

### New Matter Cross-Claim against Michael Goldner

Case ID: 160502449

227. Michael Goldner transferred or caused to be transferred all money deposited with JDJSL.

228. If money received and distributed by JDJSL was improperly transferred, then Michael Goldner is solely liable to Plaintiffs.

229. If Reger Rizzo is liable to Plaintiffs through the conduct of Luber related to money transferred to JDJSL, then Michael Goldner is liable over to Reger Rizzo for money transferred to JDJSL that JDJSL was not entitled to receive or distribute.

230. Michael Goldner transferred all money from Main Street used to purchase the Malvern Property.

231. If money used to purchase the Malvern Property was improperly transferred, then Michael Goldner is solely liable to Plaintiffs.

232. If Reger Rizzo is liable to Plaintiffs through the conduct of Luber for money used to purchase the Malvern Property, then Michael Goldner is liable to Reger Rizzo for the money transferred from Main Street and used to purchase the Malvern Property.

233. Reger Rizzo is entitled to indemnity from Michael Goldner.

**WHEREFORE,** Defendant, Reger Rizzo & Darnell, LLP, requests that Judgment be entered in its favor and against Defendant, Michael Goldner.

### New Matter Cross-Claim against Goldner Family Trust

234. Luber served as trustee of the Goldner Family Trust.

235. Article II, Section E(3) of the Goldner Family Trust Agreement provides: "The Trustee shall be exonerated from all further accountability and liability for all assets distributed in accordance with this Article II."

Case ID: 160502449

236. Pursuant to the Goldner Family Trust Agreement, Article X, Section B: "No Trustee shall be responsible for any act or omission of any other Trustees. If the Trustees become liable as Trustees to any other person who is not a beneficiary, in connection with matters not within the Trustees' control and not due to the Trustees' actual fraud, gross negligence, or willful misconduct, the Trustees shall be entitled to indemnity out of trust assets."

237. If the Goldner Family Trust improperly received money which belonged to Plaintiffs, then the Goldner Family Trust is solely liable to Plaintiffs.

238. If Reger Rizzo is liable to Plaintiffs for the conduct of Luber as trustee for the Goldner Family Trust for money received by the Goldner Family Trust, then the Goldner Family Trust is liable over to Reger Rizzo for money the Goldner Family Trust was not entitled to receive or distribute.

239. Reger Rizzo is entitled to common law and contractual indemnity from the Goldner Family Trust.

**WHEREFORE,** Defendant, Reger Rizzo & Darnell, LLP, requests that Judgment be entered in its favor and against Defendant, the Goldner Family Trust.

### New Matter Cross-Claim against JDJSL LLC

240. Upon information and belief, Luber served as the managing member of JDJSL.

241. Section 6.03 of JDJSL's Operating Agreement provides: "The Company shall indemnify and hold harmless the Managing Member against any claim, liability, damage, loss, expense, or obligation including without limitation, investigating and defending any claims and lawsuits and settlement thereof, and legal and accounting costs in connection therewith, incurred by it by virtue of the performance by the Managing Member of its duties as managing member in connection with the Company's business, so long as the Managing Member acted in good faith

Case ID: 160502449

on behalf of the Company and in the manner reasonably believed by the Managing Member to be in the best interest of the Company and did not constitute gross negligence, willful misconduct, fraud, or a breach of fiduciary duty."

242.　Pursuant to JDJSL's Operating Agreement, Section 7.01, JDJSL must indemnify Luber for all "judgments, penalties (including excise and similar taxes and punitive damages), fines, settlements and reasonable expenses (including, without limitation, attorneys, fees) actually incurred" in the present action.

243.　If money received and distributed by JDJSL belongs to Plaintiffs, then JDJSL is solely liable to Plaintiffs.

244.　If Reger Rizzo is liable to plaintiffs for the conduct of Luber taken as managing member of JDJSL, then JDJSL is liable over to Reger Rizzo for money JDJSL was not entitled to receive or distribute.

245.　Reger Rizzo is entitled to common law and contractual indemnification from JDJSL.

**WHEREFORE,** Defendant, Reger Rizzo & Darnell, LLP, requests that Judgment be entered in its favor and against Defendant, JDJSL LLC.

### New Matter Cross-Claim against Dovecote LLC

246.　Upon information and belief, Luber served as the managing member of Dovecote.

247.　Section 11 of Dovecote's Operating Agreement provides: "Neither the Member nor the Manager shall have any liability for the debts, obligations or liabilities of the Company or for the acts or omissions of any other member, director, officer, agent or employee of the Company except to the extent provided in the Act."

Case ID: 160502449

248. Pursuant to Dovecote's Operating Agreement, Section 12, "The Company shall indemnify the Member or Manager and those authorized agents of the Company identified in writing by the Member as entitled to be indemnified under this section for all costs, losses, liabilities and damages paid or accrued by the Member or Manager in connection with the business of the Company, to the fullest extent provided or allowed by the laws of the Commonwealth of Pennsylvania."

249. If money received and distributed by Dovecote belongs to Plaintiffs, then Dovecote is solely liable to Plaintiffs.

250. If Reger Rizzo is liable to Plaintiffs for the acts of Luber taken as the managing member of Dovecote, then Dovecote is liable over to Reger Rizzo for money Dovecote received from Plaintiffs

251. Reger Rizzo is entitled to common law and contractual indemnification from Dovecote LLC.

**WHEREFORE,** Defendant, Reger Rizzo & Darnell, LLP, requests that Judgment be entered in its favor and against Defendant, Dovecote LLC.

Respectfully submitted,

**KANE, PUGH, KNOELL, TROY & KRAMER, LLP**

By: _____
PAUL C. TROY, ESQUIRE
Attorney for Defendant
Reger, Rizzo & Darnell LLP

Case ID: 160502449

## VERIFICATION

I, Louis J. Rizzo, Esq., state under the penalties of 18 Pa. C.S. § 4904 (relating to unsworn falsification to authorities) that I am the authorized agent of the Defendant in the within action; that as such, I am authorized to take this Verification; and that the facts set forth in the foregoing Answer with New Matter to Plaintiffs' Second Amended Complaint are true and correct to the best of my knowledge, information and belief.

_____
LOUIS J. RIZZO, ESQUIRE

DATE: 6/13/17

Case ID: 160502449

**KANE, PUGH, KNOELL, TROY & KRAMER, LLP**
BY:    PAUL C. TROY, ESQUIRE
Identification No. 60875                              Attorney for Defendant
510 Swede Street                                     Reger Rizzo & Darnell LLP
Norristown, PA  19401
(610) 275-2000

---

| | | |
|---|---|---|
| MAIN STREET BUSINESS FUNDING, LLC | : | COURT OF COMMON PLEAS OF |
| AND ROBERT S. GOGGIN, III | : | PHILADELPHIA, PA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. GOLDNER; JDJSL LLC; | : | May Term, 2016 |
| DOVECOTE LANE, LLC; JOEL S. LUBER; | : | No. 002449 |
| AND REGER RIZZO & DARNELL LLP | : | |

---

## CERTIFICATE OF SERVICE

I, Paul C. Troy, Esquire certify that a true and correct copy of DEFENDANT REGER

RIZZO & DARNELL, LLP'S ANSWER WITH NEW MATTER TO PLAINTIFFS' SECOND

AMENDED COMPLAINT was served via the electronic filing system and via Email as follows:

Oliver D. Griffin, Esquire
Peter N. Kessler, Esquire
Kutak Rock, LLP
50 South 16th Street, Suite 28B
Philadelphia, PA 19102
**Email:  oliver.griffin@kutakrock.com**

Jeffrey B. McCarron, Esquire
SWARTZ CAMPBELL LLC
TWO LIBERTY PLACE
50 S. 16th Street, 28th Floor
Philadelphia, PA 19102
**Email: jmccarron@swartzcampbell.com**

William A. Harvey, Esquire
William J. Clements, Esquire
Klehr Harrison Harvey Branzburg LLP
1835 Market Street, Suite 1400
Philadelphia, PA 19103
**Email: wclements@klehr.com**
**Email: WHARVEY@KLEHR.COM**

**KANE, PUGH, KNOELL, TROY & KRAMER, LLP**

By: _____

     PAUL C. TROY, ESQUIRE
     Attorney for Defendant
      Reger, Rizzo & Darnell LLP

Case ID: 160502449

**To: Plaintiff**
You are hereby notified to file a written response to the enclosed
New Matter within twenty (20) days from service hereof or a
judgment may be entered against you.

SWARTZ CAMPBELL LLC

By: _Jeffrey B. McCarron_

**To: Michael J. Goldner, JDJSL, LLC, Dovecote Lane, LLC,
Goldner Family Irrevocable Trust**
You are hereby notified to file a written response to the enclosed
New Matter cross-claim within twenty (20) days from service hereof
or a judgment may be entered against you.

SWARTZ CAMPBELL LLC

By: _Jeffrey B. McCarron_

Filed and Attested by the
Office of Judicial Records
07 JUL 2017 04:12 pm
K. EDWARDS

**SWARTZ CAMPBELL LLC**
**BY:**    Jeffrey B. McCarron
       Josh J.T. Byrne
       Identification No. 49467, 85474
       50 S. 16th Street, 28th Floor
       Philadelphia, PA 19102
       (215) 564-5190

                          Attorneys for Defendant,
                          Joel S. Luber

---------------------------------------------------------

| | | |
|---|---|---|
| MAIN STREET BUSINESS FUNDING, LLC, | : | COURT OF COMMON PLEAS |
| And ROBERT S. GOGGIN, III | : | |
| | : | |
| v. | : | PHILADELPHIA COUNTY |
| | : | No: 160502449 |
| MICHAEL J. GOLDNER, JDJSL, LLC, | : | |
| DOVECOTE LANE, LLC, JOEL S. LUBER, | : | |
| And REGER RIZZO & DARNELL, LLP | : | |
| | : | |

---------------------------------------------------------

## ANSWER OF DEFENDANT, JOEL S. LUBER, TO SECOND AMENDED COMPLAINT
## WITH NEW MATTER AND CROSSCLAIMS

      Defendant, Joel S. Luber, denies liability, responds to the averments of the second

amended complaint, asserts new matter and asserts crossclaims:

## Response To Introduction

Plaintiffs Main Street and Goggin include a multi-page "Introduction" to their second amended complaint that is not numbered. The multi-page "Introduction" is not in conformity with the rules of civil proceedings and is comprised of inflammatory, scandalous statements and conclusions of law. Answering defendant incorporates his answers to the numbered paragraphs of the second of the amended complaint and his new matter.

## Answer To Numbered Paragraphs

1.      After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averments of this paragraph.

2.      After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief about plaintiff's address.

3.      Defendant Goldner does not have an address or reside at 7 Dovecote Lane, Malvern, Pennsylvania 19355.

4.      1700 Market is not the principal place of business for JDJSL. The principal place of business for JDJSL is 226 Valley Forge Lookout Place, Radnor, Pennsylvania, 19087.

5.      Admitted.

6.      Answering defendant acknowledges he provided specific legal services to Goldner, certain entities and plaintiffs for certain matters during specific periods while the legal services were performed and not at all times. The remaining averments of the third and fourth sentences of this paragraph of the second amended complaint are denied.

Case ID: 160502449

7.     This paragraph of the second amended complaint contains conclusions of law to which no response is required.  The legal services answering defendant provided were part of the business of Reger Rizzo.

8.     The averment of this paragraph of the second amended complaint is a conclusion of law to which no response is required.

9.     There is no cause of action against answering defendant.  The averment of this paragraph of the second amended complaint is a conclusion of law to which no response is required.

10.     There is no cause of action against answering defendant.  The remaining averment of this paragraph of the second amended complaint is a conclusion of law to which no response is required.

11.     After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averment of this paragraph of the second amended complaint.

12.     Answering defendant acknowledges only that he provided specific legal services to plaintiffs for certain matters during specific periods while the legal services were performed and not at all times.  The remaining averments of this paragraph of the second amended complaint are denied.

13.     This paragraph of the second amended complaint contains conclusions of law to which no response is required.  The legal services answering defendant provided were part of the business of Reger Rizzo.

3

Case ID: 160502449

14. The averment of this paragraph of the second amended complaint is a conclusion of law to which no response is required. Answering defendant did not owe a fiduciary duty to plaintiffs except in relation to the matters for which legal services were performed. The remaining averment of this paragraph of the second amended complaint is denied.

15. The averment of this paragraph of the second amended complaint is a conclusion of law to which no response is required. Answering defendant did not owe a fiduciary duty to plaintiffs except in relation to the matters for which legal services were performed. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averment of this paragraph of the second amended complaint.

16. Answering defendant performed legal services for plaintiffs as provided by written engagement agreements. Answering defendant did not draft the documentation for the establishment or operation of Main Street Business Funding, LLC. Answering defendant did not represent Main Street except as provided by the written engagement agreement which included plaintiffs' representation and warranty they would either be represented independent of answering defendant for negotiation of agreements or would decline the opportunity to be represented. Answering defendant assisted Goggin in setting up Goggin Family Trust and drafted the documentation for the Goggin Family Trust as provided in the written engagement agreement and the transfer of assets to fund the Goggin Family Trust. Answering defendant does not act as counsel for the administration of the Goggin Family Trust and was not paid the fees as alleged in this paragraph of the second amended complaint. After reasonable investigation

4

Case ID: 160502449

answering defendant is without knowledge or information sufficient to form a belief as the truth of the averment that Goggin, and only Goggin, established Main Street.

17.    Answering defendant performed legal services for Golder at various times in accordance with written engagement agreements.  The remaining averment of the first sentence of this paragraph of the second amended complaint is denied.

18.    After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averments of this paragraph of the second amended complaint.

19.    Goldner had no agreement with Main Street to serve as a consultant.  The Consulting Agreement was between Main Street and JDJSL.  JDJSL performed its obligation pursuant to the Consulting Agreement by making Goldner available to Main Street.  Answering defendant was not fatally conflicted and did not structure relationships for the benefit of answering defendant.  The written engagement agreement provided for waiver of conflict of interest and included plaintiffs' representation and warranty they would either be represented independent of answering defendant for negotiation of agreements or would decline the opportunity to be represented.  The contractual relationships were established to achieve the objective expressed by plaintiffs.

20.    Answering defendant provided assistance, but he did not make decisions concerning the structure or orchestrate the structure.  The arrangement between Main Street and JDJSL was suggested to serve Main Street's objective and was acceptable to all parties.  The structure was not suggested with the intent that it would benefit or provide control to answering defendant.  Plaintiffs approved the arrangement with JDJSL.  JDJSL and Main Street had a

5

Case ID: 160502449

contractual arrangement, but were not one client married to another client. The Consulting Agreement appropriately provided for the rights and obligations of the parties which served as protection.

21.     The beneficiaries of the Goldner Family Trust are Goldner, Goldner's wife and member's of Goldner's issue. Luber no longer derives income from JDJSL.

22.     Answering defendant did not draft the Consulting Agreement for his personal benefit. Answering defendant did not know or believe Main Street and JDJSL were in conflict. Answering defendant represented JDJSL for the Consulting Agreement and did not represent Main Street for Consulting Agreement.

23.     Answering defendant represented JDJSL for the Consulting Agreement. Answering defendant informed plaintiffs of a conceivable conflict of interest. The written engagement agreement provided for waiver of conflict of interest and included plaintiffs' representation and warranty they would either be represented independent of answering defendant for negotiation of agreements or would decline the opportunity to be represented. Plaintiffs warranted and represented in the written engagement agreement there may be inherent conflicts of interest in making recommendations to Main Street that might favor one or the other. Answering defendant did not fail to withdraw from representation and did not commit legal malpractice or fail to exercise ordinary skill and knowledge. Answering defendant properly handled representation and did not pursue a course contrary or antithetical to the interests of plaintiffs.

24.     The averments of this paragraph are admitted only to the extent consistent with the provisions of the referenced Consulting Agreement.

Case ID: 160502449

25.     The averments of this paragraph are admitted only to the extent consistent with the provisions of the referenced Consulting Agreement.

26.     The averments of this paragraph are admitted only to the extent consistent with the provisions of the referenced Consulting Agreement.

27.     The averments of this paragraph concerning the provisions of the referenced Consulting Agreement are admitted only to the extent consistent with the provisions of the Consulting Agreement.  Answering defendant did not broker a deal.  The Consulting Agreement was not adverse or detrimental to plaintiffs.  Any benefit answering defendant received was not to the detriment of plaintiffs.

28.     The first sentence is admitted.  After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

29.     Answering defendant did not conspire, agree or act to divert plaintiffs' money.

30.     Answering defendant did not seek to purchase the Malvern Property.

31.     Dovecote was created by Goldner Family Trust and was not created by answering defendant or Goldner.  Answering defendant, in his capacity as trustee, prepared the documents to create Dovecote.

32.     Admitted.

33.     Admitted.

34.     After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

7

Case ID: 160502449

35.     After reasonable investigation Answering defendant is without knowledge or information sufficient to form a belief as the truth of the averments of this paragraph of the second amended complaint except that more than $150,000 was needed to close on the acquisition of the Malvern Property.

36.     Answering defendant did not aid Goldner in obtaining the Par Loan.  Answering defendant was not involved with the Par Loan.   After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

37.     Answering defendant did not know of the Par Loan or looting, had no involvement in the Par Loan, did not fail to counsel plaintiffs, did not act to the detriment of plaintiffs and did not act to protect a flow of income to JDJSL.  Answering defendant did not derive a benefit from the Par Loan or the funds used to purchase the Malvern Property.  There was no conflict of interest in respect to JDJSL and Dovecote.  Answering defendant did not fail to withdraw from representation or inform plaintiffs, and did not commit legal malpractice or fail to exercise ordinary skill and knowledge.  No conflict of interest arose because of conduct by answering defendant.  Answering defendant properly handled representation and did not pursue a course contrary or antithetical to the interests of plaintiffs.  There was no existing matter of representation requiring answering defendant to withdraw.

38.     After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averments of this paragraph of the second amended complaint.

Case ID: 160502449

39. Answering defendant did not aid embezzlement. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint including whether Goldner embezzled.

40. The transfers were not for the benefit of answering defendant. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint except that Knights Abstract, Inc. was the title insurance company for the purchase of the Malvern Property and funds in the alleged amounts were transferred to Knights Abstract, Inc.

41. Admitted.

42. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averments of this paragraph of the second amended complaint.

43. The alleged conduct by Goldner was not with connivance by answering defendant. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint including whether Goldner embezzled.

44. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averments of this paragraph of the second amended complaint.

Case ID: 160502449

45.    After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averments of this paragraph of the second amended complaint.

46.    After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averments of this paragraph of the second amended complaint.

47.    Answering defendant did not help Goldner allegedly disguise from plaintiffs information concerning the Par Loan. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

48.    Answering defendant did not have, compound or overlay conflicts. Answering defendant did not facilitate the Par Loan or the alleged theft. There was no conceivable conflict in need of a waiver not waived by plaintiffs. Answering defendant did not represent anyone for the acquisition of the Malvern Property by Dovecote and there was no existing matter of representation creating a conflict for the Malvern Property acquisition by Dovecote. Answering defendant did not act for his own benefit. There was no existing matter of representation requiring answering defendant to withdraw. Answering defendant did not fail to withdraw from representation and did not commit legal malpractice or fail to exercise ordinary skill and knowledge. Answering defendant properly handled representation and did not pursue a course contrary or antithetical to the interests of plaintiffs. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the

Case ID: 160502449

remaining averments of this paragraph of the second amended complaint including whether Goldner committed theft.

49. Admitted.

50. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averments of this paragraph of the second amended complaint.

51. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

52. Answering defendant did not know Goldner had allegedly stolen, embezzled or taken money from Main Street, know the funds had travelled an extraordinary path, facilitate, countenance enable, conceal or paper over the alleged theft, act for his own benefit or know information warranting an alert to plaintiffs. Answering defendant did not know of the Par Loan. There was no existing matter of representation creating a conflict. There was no existing matter of representation requiring answering defendant to withdraw. Answering defendant did not fail to withdraw from representation and did not commit legal malpractice or fail to exercise ordinary skill and knowledge. Answering defendant properly handled representation and did not pursue a course contrary or antithetical to the interests of plaintiffs. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint including whether Golder stole or embezzled.

11

Case ID: 160502449

53.    Answering defendant did not commit bad acts or help Goldner get away with the alleged fraud.  Answering defendant did not act for his own benefit or protection, line his pockets or protect Goldner.  After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint including whether Goldner committed fraud.

54.    The demand note was prepared to reflect the full extent of Goldner's obligation to Main Street and was not a sham or without protection for Main Street.  The demand note was dated to reflect the date the funds were received from Main Street and was not backdated.  Answering defendant exercised ordinary skill and knowledge.

55.    After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averment in the last sentence of this paragraph of the second amended complaint.

56.    Admitted.

57.    Admitted.

58.    After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averment in the last sentence of this paragraph of the second amended complaint.

59.    The letters were dated to reflect the applicable date and were not backdated.

60.    The Demand Note contained appropriate provisions.  The Demand Note did not favor one over another.  After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averment concerning the alleged theft.  Answering defendant did not act as the lawyer for plaintiffs for the Demand Note,

Case ID: 160502449

did not act to the detriment of plaintiff, did not act to for his own benefit and there was no conflict of interest. Answering defendant did not fail to withdraw from representation and did not commit legal malpractice or fail to exercise ordinary skill and knowledge. Answering defendant properly handled representation and did not pursue a course contrary or antithetical to the interests of plaintiffs.

61. The averments of this paragraph of the second amended complaint are admitted only to the extent consistent with the content of the referenced letter.

62. The averments of this paragraph of the second amended complaint are admitted only to the extent consistent with the content of the referenced letter.

63. The averments of this paragraph of the second amended complaint are admitted only to the extent consistent with the content of the referenced letter.

64. The averments of this paragraph of the second amended complaint are admitted only to the extent consistent with the content of the referenced letter.

65. The letters and paperwork was not a sham and did not favor one over another. Answering defendant did not represent or betray plaintiffs and he did act for his own benefit. Answering defendant did not represent Goldner, JDJSL or Dovecote for the matter and he did not act for his own benefit or the benefit of Goldner, JDJSL or Dovecote. There was no conflict.

66. Answering defendant did not fail to withdraw from representation and did not commit legal malpractice or fail to exercise ordinary skill and knowledge. Answering defendant properly handled representation and did not pursue a course contrary or antithetical to the interests of plaintiffs.

Case ID: 160502449

67.     Answering defendant did not engage in a fraudulent scheme. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

68.     Answering defendant was not involved in a scheme or cover up and did not fabricate or backdate documents or act to protect himself or Goldner. The averments of this paragraph of the second amended complaint are denied to the extent inconsistent with the content of the referenced letter. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

69.     Answering defendant did not cover up or send two versions of the letter to cover up.

70.     It is admitted only that answering defendant met with plaintiff Goggin along with Goldner at Butcher and Singer. Answering defendant denies the remaining averment of this paragraph of the second amended complaint.

71.     Goggin did not ask answering defendant to explain.

72.     Answering defendant did not acknowledge he knew Goldner had taken money he was not entitled to take or smile or promise Goggin that Goldner was going to make it right after Goldner's sentencing hearing.

73.     After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averments of this paragraph of the second amended complaint.

Case ID: 160502449

74. It is admitted only that Goldner acknowledged the funds deposited with Knights Abstract for the purchase of the Malvern Property came from Main Street.

75. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averment of this paragraph of the second amended complaint.

76. The averments of this paragraph are denied to the extent inconsistent with the content of the referenced email. Answering defendant did not acknowledge a conflict of interest relating to plaintiffs or that he had perpetuated a conflict of interest for years. Any conflict had been disclosed, waived and consented to by plaintiffs. There was no damage attributable to a conflict of interest.

77. Answering defendant did not purport to be acting as an attorney for Goldner during the meeting or seek to protect Goldner. Answering defendant did not admit he also represented Goggin or purported to act as counsel for Goggin. Answering defendant did not commit malpractice. Answering defendant acted appropriately.

78. Answering defendant did not belatedly acknowledge a conflict of interest. The averments of this paragraph are denied to the extent inconsistent with the content of the referenced email. Answering defendant did not acknowledge a conflict of interest relating to plaintiffs. Any conflict had been disclosed, waived and consented to by plaintiffs. Answering defendant did not fail to withdraw from representation and did not commit legal malpractice or fail to exercise ordinary skill and knowledge. Answering defendant properly handled representation and did not pursue a course contrary or antithetical to the interests of plaintiffs.

Case ID: 160502449

79.     Answering defendant did not attempt to put on a new spin or legitimize an alleged theft.  Answering defendant did not identify Goggin as his client.

80.     After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averments of this paragraph of the second amended complaint.

81.     After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averments of this paragraph of the second amended complaint.

82.     After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averments of this paragraph of the second amended complaint.

83.     After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averments of this paragraph of the second amended complaint.

84.     After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averments of this paragraph of the second amended complaint.

85.     Answering defendant was not involved with an agreement other than the Consulting Agreement.  Answering defendant and Reger Rizzo represented only JDJSL for the Consulting Agreement and did not represent plaintiffs for the Consulting Agreement.  There was nothing about the structure of the Consulting Agreement which did not protect plaintiffs from the alleged thievery.  The Consulting Agreement appropriately provided for the rights and

Case ID: 160502449

obligations of the parties which served as protection. Answering defendant and Reger Rizzo did not fail to protect plaintiff. The arrangement was not suggested to make answering defendant money. The arrangement between Main Street and JDJSL was suggested to serve Main Street's objective and was acceptable to all parties. Plaintiffs approved the arrangement with JDJSL. Answering defendant did not belatedly acknowledge a conflict of interest. The averments of this paragraph are denied to the extent inconsistent with the content of the referenced email. Answering defendant did not acknowledge a conflict of interest relating to plaintiffs. Any conflict had been disclosed, waived and consented to by plaintiffs. Answering defendant did not fail to withdraw from representation and did not commit legal malpractice or fail to exercise ordinary skill and knowledge. Answering defendant properly handled representation and did not pursue a course contrary or antithetical to the interests of plaintiffs. Answering defendant and Reger Rizzo are not responsible for plaintiffs' alleged damages.

86. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averments of this paragraph of the second amended complaint.

## Count I

87. Answering defendant incorporates his answers to the above paragraphs.

88. Answering defendant did not participate in a fraudulent scheme, embezzle money or cover up. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

Case ID: 160502449

89.     Answering defendant did not commit misconduct or act to hide his conduct. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

90.     Answering defendant did not represent information to plaintiffs concerning the amount needed to purchase the Malvern Property. Answering defendant did not intend to transfer money from Main Street for the purchase of the Malvern Property. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

91.     Answering defendant was not in a close, confidential or fiduciary relationship with Goldner. Answering defendant did not represent information to plaintiff about his intent concerning the purchase of the Malvern Property. Plaintiffs did not rely on answering defendant concerning a decision to loan funds to Goldner. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

92.     Answering defendant did not represent information to plaintiff concerning the purchase of the Malvern Property. Plaintiffs did not rely on answering defendant concerning a decision to loan funds to Goldner. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

Case ID: 160502449

93.	Answering defendant did not state an intent to plaintiff concerning the purchase of the Malvern Property. Answering defendant did not transfer money from plaintiffs or deprive plaintiffs of a right, possession or use of money. Money from plaintiffs for the purchase of the Malvern Property did not benefit answering defendant. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

94.	Answering defendant did not effectuate a transfer of money, take out a loan from Par Funding or convert funds. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

95.	Answering defendant did not repay or participate in repayment of the loan. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

96.	Answering defendant did not harm, or cause a loss to, plaintiffs. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

97.	Answering defendant did not embezzle, conceal embezzlement, create false documentation or commit unlawful acts. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

Case ID: 160502449

98.     The request for relief in this paragraph of the second amended complaint is a legal conclusion for which no response is required.  The relief requested by plaintiffs is not properly asserted against answering defendant.  Answering defendant did not transfer plaintiffs' funds or commit fraud.  After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

WHEREFORE, defendant, Joel S. Luber, demands judgment in his favor and against plaintiffs.

### Count II

99.     Answering defendant incorporates his answers to the above paragraphs.

100.    Answering defendant did not take out the Par Loan, transfer money, deprive plaintiffs of a right or use of property or benefit from the money.  Dovecote did not take out or transfer the money.  After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

101.    Answering defendant did not repay, or cause repayment of, the Par Loan, deprive plaintiffs of a right or use of property or benefit from the money.  Dovecote did not repay or cause repayment of the Par Loan.  After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

102.    Answering defendant and Dovecote did not transfer plaintiffs' property.  After reasonable investigation answering defendant is without knowledge or information sufficient to

Case ID: 160502449

form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

103.    Dovecote did not make transfers.    After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

104.    The request for relief in this paragraph of the second amended complaint is a legal conclusion for which no response is required.  The relief requested by plaintiffs is not properly asserted against answering defendant.  Answering defendant did not transfer or unlawfully receive funds.  After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

WHEREFORE, defendant, Joel S. Luber, demands judgment in his favor and against plaintiffs.

### Count III

105.    Answering defendant incorporates his answers to the above paragraphs.

106.    Answering defendant, Dovecote and JDJSL did not participate in a conspiracy, embezzle funds, conceal embezzlement, falsely represent information to plaintiffs or backdate documents.    After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

107.    Answering defendant did not participate in a conspiracy or embezzle funds.

108.    Answering defendant did not participate in a conspiracy or act for his own benefit.

21

Case ID: 160502449

109. Answering defendant did not participate in a conspiracy, act for his own interest or assist in or cover up embezzlement.

110. JDJSL, Dovecote and answering defendant did not transfer, participate in a transfer of, or have as an objective the transfer of, assets from Main Street. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

111. Answering defendant, Dovecote and JDJSL did not participate in a conspiracy. The alleged damages are not due to actionable conduct by answering defendant.

WHEREFORE, defendant, Joel S. Luber, demands judgment in his favor and against plaintiffs.

### Count IV

112. Answering defendant incorporates his answers to the above paragraphs.

113. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averments of this paragraph of the second amended complaint.

114. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

115. Admitted.

116. The allegation in this paragraph is a conclusion of law to which no response is required.

Case ID: 160502449

117.    Answering defendant incorporates his answers to the above paragraphs.

118.    After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averments of this paragraph of the second amended complaint.

119.    Millions of dollars was not transferred to JDJSL.  JDJSL did not receive the benefit of millions of dollars.  After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

120.    After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second complaint.

121.    After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second complaint.

122.    This paragraph of the second amended complaint includes conclusions of law to which no responses are required.  The relationship between plaintiffs and JDJSL was contractual. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

123.    Plaintiffs did not disperse millions of dollars to JDJSL.  After reasonable investigation answering defendant is without knowledge or information sufficient to form a

Case ID: 160502449

belief as the truth of the remaining averments of this paragraph of the second amended complaint.

124. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averments of this paragraph of the second amended complaint.

125. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averments of this paragraph of the second amended complaint.

126. This paragraph of the second amended complaint includes conclusions of law to which no responses are required. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

127. This paragraph of the second amended complaint includes conclusions of law to which no responses are required.

**Count VI**

128. Answering defendant incorporates his answers to the above paragraphs.

129. Millions of dollars was not transferred to JDJSL. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

130. Millions of dollars was not transferred to JDJSL. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

Case ID: 160502449

131.    This paragraph of the second amended complaint includes conclusions of law to which no responses are required.  After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

132.    This paragraph of the second amended complaint includes conclusions of law to which no responses are required.  After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

133.    This paragraph of the second amended complaint includes conclusions of law to which no responses are required.

### Count VII

134.    Answering defendant incorporates his answers to the above paragraphs.

135.    JDJSL and answering defendant did not cause Main Street to transfer money to JDJSL.  Millions of dollars was not transferred to JDJSL.  Main Street did not confer a substantial benefit on answering defendant.  After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

136.    Answering defendant did not accept, retain or enjoy the benefit of "excess transfers."  After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

Case ID: 160502449

137.     This paragraph of the second amended complaint includes a conclusion of law to which no response is required.  Answering defendant did not receive an unjust benefit from plaintiffs.   After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

WHEREFORE, defendant, Joel S. Luber, demands judgment in his favor and against plaintiffs.

### Count VIII

138.     Answering defendant incorporates his answers to the above paragraphs.

139.     Goldner provided services to Main Street through a contract Main Street had with JDJSL.

140.     The averment of this paragraph of the second amended complaint is a conclusion of law to which no response is required.

141.     The averment of this paragraph of the second amended complaint is a conclusion of law to which no response is required.

142.     The averment of this paragraph of the second amended complaint includes a conclusion of law to which no response is required.  After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

143.     The averment of this paragraph of the second amended complaint includes a conclusion of law to which no response is required.  After reasonable investigation answering

Case ID: 160502449

defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

### Count IX

144.    Answering defendant incorporates his answers to the above paragraphs.

145.    Answering defendant provided assistance to achieve the objective of plaintiffs to allow plaintiffs to have the benefit of services from Goldner through JDJSL.    Answering defendant did not facilitate Goldner's consultancy.

146.    The averment of this paragraph of the second amended complaint includes a conclusion of law to which no response is required.    Answering defendant did not provide substantial assistance or encouragement to Goldner's alleged breach of fiduciary duty, conceal looting or generate backdated documents.    After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

147.    The averment of this paragraph of the second amended complaint includes a conclusion of law to which no response is required.    Answering defendant's services were not an integral part of Goldner's alleged breach of fiduciary duty.    Answering defendant did not aid improper conduct.    The alleged breach of fiduciary duty was committed without the assistance of answering defendant.    After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

Case ID: 160502449

148.    Answering defendant did not aid or abet Goldner.  Answering defendant did not

act knowingly, intentionally, willfully, wantonly, maliciously or recklessly.  The alleged breach

of fiduciary duty was committed without the assistance of answering defendant.

149.    Plaintiffs are not entitled to an award of punitive damages.  Punitive damages are

not warranted.

WHEREFORE, defendant, Joel S. Luber, demands judgment in his favor and against

plaintiffs.

## Count X

150.    Answering defendant incorporates his answers to the above paragraphs.

151.    Answering defendant and Reger Rizzo represented plaintiffs for those matters

specifically identified in written engagement agreements and not for any other matter.

152.    The averment of this paragraph of the second amended complaint is a conclusion

of law to which no response is required.  A fiduciary duty owed by answering defendant and

Reger Rizzo was limited.

153.    The averment of this paragraph of the second amended complaint is a conclusion

of law to which no response is required.  A duty to disclose information to Goggin was limited.

154.    Answering defendant did not abuse a trust or breach a fiduciary duty.  Answering

defendant did not favor the interest of Luber, JDJSL, Dovecote or Goldner above plaintiffs.  The

interest of answering defendant was not directly adverse to plaintiffs for any matter in which

answering defendant represented plaintiff.  The Consulting Agreement was suggested to achieve

the objective of plaintiffs to allow plaintiffs to have the benefit of services from Goldner through

JDJSL.  There was nothing improper about the Consulting Agreement.  Answering defendant's

Case ID: 160502449

involvement and arrangement with JDJSL was permissible and proper. Plaintiffs consented and agreed to the arrangement. Answering defendant did not establish a consultancy of Goldner. Answering defendant did not know of, or involved with, the Par Loan. Answering defendant did not know of, perpetuate or obfuscate the alleged theft or looting. Answering defendant did not represent directly adverse interests and proceeded with the benefit of agreement, waiver and consent to the alleged conflict. Answering defendant did not fail to withdraw. There was no circumstance warranting withdrawal. Answering defendant's involvement with the management of Dovecote was permissible and proper. Answering defendant did not create false documents or conceal a fraud.

155. Answering defendant and Reger Rizzo did not breach a duty or fail to perform. Plaintiffs are not entitled to monetary damages from answering defendant or Reger Rizzo. Answering defendant did not act knowingly, intentionally, willfully, wantonly, maliciously or recklessly. Plaintiffs are not entitled to an award of punitive damages. Punitive damages are not warranted. Disgorgement is not an available remedy or appropriate relief.

156. This paragraph includes a conclusion of law to which no response is required. Answering defendant acted exercised ordinary skill and knowledge and did not commit malpractice.

WHEREFORE, defendant, Joel S. Luber, demands judgment in his favor and against plaintiffs.

### Count XI

157. Answering defendant incorporates his answers to the above paragraphs.

Case ID: 160502449

158. Answering defendant and Reger Rizzo were attorneys for plaintiffs for those matters specifically identified in written engagement agreements and not for any other matter. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the remaining averments of this paragraph of the second amended complaint.

159. Answering defendant and Reger Rizzo were attorneys for Goldner and JDJSL for specific matters. Answering defendant and Reger Rizzo were not attorneys for Dovecote.

160. Answering defendant and Reger Rizzo did not represent plaintiffs at all times relevant to the complaint. There was no disqualifying conflict of interest. Answering defendant and Reger Rizzo proceeded with the benefit of agreement, waiver and consent to the alleged conflict. Answering defendant did not favor the interest of Luber, JDJSL, Dovecote or Goldner above plaintiffs. The interest of answering defendant was not directly adverse to plaintiffs for any matter in which answering defendant represented plaintiff. The Consulting Agreement was suggested to achieve the objective of plaintiffs to allow plaintiffs to have the benefit of services from Goldner through JDJSL. There was nothing improper about the Consulting Agreement. Answering defendant's involvement and arrangement with JDJSL was permissible and proper. Plaintiffs consented and agreed to the arrangement. Answering defendant did not establish a consultancy of Goldner. Answering defendant did not know of, or involved with, the Par Loan. Answering defendant did not know of, perpetuate or obfuscate the alleged theft or looting. Answering defendant did not not represent directly adverse interests and proceeded with the benefit of agreement, waiver and consent to the alleged conflict. Answering defendant did not fail to withdraw. There was no circumstance warranting withdrawal. Answering defendant's

Case ID: 160502449

involvement with the management of Dovecote was permissible and proper. Answering defendant did not create false documents or conceal a fraud.

161. Answering defendant did not discover Goldner, JDJSL and Dovecote had taken or embezzled, or were taking or embezzling, money from plaintiffs. JDJSL and Dovecote did not take or embezzle, were not taking or embezzling, money from plaintiffs. Answering defendant did not become aware of the accusation that Goldner had taken money from Main Street without consent until Goggin confronted Goldner.

162. Answering defendant did not know money had been stolen, embezzled or fraudulently obtained. Answering defendant did not become aware of the accusation that Goldner had taken money from Main Street without consent until Goggin confronted Goldner. Answering defendant and Reger Rizzo were not representing plaintiffs, Goldner, JDJSL or Dovecote for a matter involving another when answering defendant learned of the accusation that Goldner had taken money without consent. There was no representation from which to withdraw.

163. Answering defendant and Reger Rizzo did not compound, aid or disguise the alleged fraud, backdate documents or legitimize the alleged theft, embezzlement or fraud. Answering defendant modified the documents to correct the amount. The modifications to the documents were not to disguise or legitimize the amount allegedly taken by Goldner.

164. After reasonable investigation answering defendant is without knowledge or information sufficient to form a belief as the truth of the averments of this paragraph of the second amended complaint.

Case ID: 160502449